ELLEN M. CLAPP *vs.* MASSACHUSETTS BENEFIT ASSOCIATION.

Suffolk.   January 16, 1888. — April 7, 1888.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Beneficiary Association — Certificate — Warranty or Representation — Evidence — Burden of Proof — Exceptions.*

A certificate of benefit insurance was issued on condition that the statements of the application, which were made a part of the contract, were "in all respects true," and an acknowledgment at the end of the application recited that the applicant does "hereby warrant each of the foregoing statements to be true, to the best of my knowledge and belief, and that I have not" concealed any material information, agreeing that any "untrue or fraudulent statements" made by or for him should forfeit the insurance. *Held*, that the words "best knowledge and belief" qualified the words "untrue and fraudulent statements" as well as the word "true."

The burden of proving a representation upon which the certificate was based untrue, to the best of the applicant's knowledge and belief, is upon the beneficiary association.

At the trial of an action on the certificate there was much evidence that material statements of the applicant were not in fact correct, and the defendant association presented its case on the theory that it was entitled to a verdict if any such statement was shown to be untrue, alleging exceptions to a refusal of the

presiding judge so to rule. *Held,* that the question whether the evidence that a statement was false, and that the applicant knew or believed it to be so, was so conclusive as matter of law as to so entitle the association to a verdict, was not open upon the exceptions.

CONTRACT to recover $3,000 on a certificate of membership in the defendant association, issued to Edward A. Clapp for the benefit of his wife, Ellen M. Clapp. Trial in the Superior Court, before *Bacon,* J., who allowed a bill of exceptions, in substance as follows.

The plaintiff introduced in evidence the proofs of the death of Clapp, by which it appeared that he died on February 3, 1886, of Bright's disease, and the certificate, which was dated February 1, 1885, and contained the following condition: "The statements and declarations made by and on behalf of said member in his application to become a benefit member of said association, which are hereby referred to as the basis of this contract, and are a part thereof, and on the faith of which this certificate is issued, are in all respects true, and that no fact has been suppressed relating to his health or circumstances affecting the interests of said association, or their inducement to accept the risk."

The defendant introduced in evidence the application upon which the certificate was issued, and which contained the following questions and answers: Question 10. "Have you had, since childhood, . . . . disease of the urinary organs?" Answer. "No." Q. 11. "What sickness, disease, or injury have you ever had?" A. "Rupture." Q. 12. "How long since you were under the care of a physician, and for what cause?" A. "About two years ago. Inflammation of bowels." Q. 13. "Have you now any disorder, infirmity, or weakness?" A. "No." Q. 17. "Has any proposal or application to insure your life ever been made to any company or agent upon which a policy has not been issued? If so, state full particulars." A. "No." Q. 18. "Name and residence of your usual medical attendant?" A. "Dr. Wesselhoeft, Cambridge, Mass."

The application bore at the end thereof the following acknowledgment subscribed by Clapp: "I, Edward A. Clapp, of West Manchester, county of Essex, State of Massachusetts, do hereby warrant each and all the foregoing particulars and statements to be true, to the best of my knowledge and belief, and that I

have not, in this application for above-named contract, concealed or withheld any material circumstance or information concerning the past or present state of my health or habits of life; and I do hereby acknowledge, consent, and agree that any untrue or fraudulent statement made above, by me or any one else, or to any medical examiner of said Massachusetts Benefit Association, or any concealment of facts, by me or any one else, may forfeit and cancel all rights to any benefit under the above-named contract. Dated at Boston, State of Massachusetts, this 13th day of February, 1885.  Edward A. Clapp, Applicant.  Witness: S. T. Elliot."

Benjamin F. Dyer, secretary of the New England Mutual Aid Society, called by the defendant, testified that on December 18, 1883, Clapp made an application for additional insurance on his life in that society; that the application was declined, and that fact was communicated by him to Clapp; that Clapp was advised to communicate with his attending physician; that Clapp insisted on knowing what the difficulty was, and was informed; that he told Clapp " that the analysis of the urine was unsatisfactory"; that he had conversations with Clapp at several different times; and that Clapp said he had seen his physician, thought that we had been too particular in declining his application, that there was no real difficulty, that it was something that was only temporary, and that he would soon recover from the difficulty." On cross-examination, he said that he thought he had not given Clapp any written notice that his application had been declined; that he did not tell him that the application was declined because they did not wish to increase the risk, but his recollection was that he informed him that they would not accept him for an additional sum for the reason that his application was unsatisfactory; that after he had told him that he declined to take the additional insurance Clapp came in and discussed the question a half-dozen times, and that their conversations were within three or four months after the examination was made; that he did not know that he ever showed Clapp the indorsement upon his application, " Declined," but his impression was that the application was before them; that Clapp's object in the conversations appeared to be to convince the doctor and himself that some mistake had been made in regard to the analysis of the urine; and that Clapp was a man of cheerful, sanguine temperament,

of robust frame, in the prime of life, and to all appearance a well man.

Dr. J. A. Follett, the medical examiner of the New England Mutual Aid Society, called by the defendant, testified, that upon examining Clapp he refused to pass him or recommend him as a safe risk, basing his decision upon a single examination of the urine, in which he found a very large amount of albumen ; that . he told him that the application was declined because of the presence of albumen in the urine ; that Clapp wished to know what that meant ; that in quite an extended conversation he told Clapp that it was what was commonly called Bright's disease ; that he told him that he preferred not to use the words " Bright's disease," because those words covered sundry different conditions, but preferred to call it, and so called it, " albumen in the urine, or chronic nephritis, or acute nephritis"; that Clapp wished to know if it was a curable disease; that he told him that he did not think it was curable, although patients having it sometimes apparently had recovered ; that he saw Clapp at least three times, and thought it was seven or eight; and that at one of their interviews Clapp told him that he had consulted Dr. Morrill Wyman, who did not discourage him quite so much as he did.

Dr. Morrill Wyman, called by the defendant, testified, that Clapp first came to see him in the latter part of December, 1883, and that after that he attended him at his house for a nervous affection, with convulsive movements ; that he did not think he made up his mind to what to attribute it ; that he examined the urine, and found a certain amount of albumen ; that he continued to treat Clapp, who continued in a somewhat similar condition until May or June, 1884 ; that he did not know that the nervous condition to which he referred was due to the condition of the urine.   On cross-examination, he said that in February, 1884, Clapp had a severe illness, which confined him to his house for six weeks ; that he was his attending physician during that illness ; that he first began to treat him as a patient some time in December, 1883, and continued to do so until March 23, 1885 ; that he treated him for a nervous affection, with convulsive movements, in February, 1884 ; that he found albumen to a certain extent in Clapp's urine, his last examination being made on March 23, 1885 ; that he made a careful examination of the urine

a good many times; that it would have been rash in any physician to say that he had Bright's disease; and that a physician could safely say that he had symptoms pointing towards Bright's disease.

The plaintiff testified that her husband had some disease of the kidneys, for which he was treated by Dr. Wyman, in the early part of 1884, and that he was attended by Dr. Wesselhoeft at some time in 1883, before he was attended by Dr. Wyman, but not afterwards.

After the evidence was in, the defendant requested the judge to rule that on the whole evidence the plaintiff could not recover, and that a verdict should be returned for the defendant.

The judge refused so to rule, and the defendant requested the following rulings:

" 1. That each one of the questions in the application of Clapp, the deceased member, was made material to the risk assumed by the defendant association, and if any one of the answers was untrue, from design or otherwise, the plaintiff cannot recover in this action, and the verdict should be for the defendant.

" 2. If Edward A. Clapp, the deceased, at any time before February 13, 1885, had any disease of the urinary organs, then his answer to the tenth question was untrue, and the plaintiff cannot recover, but the verdict must be for the defendant.

" 3. If the said Clapp, before February 13, 1885, had any sickness, disease, or injury other than rupture, then his answer to the eleventh question was untrue, and the verdict should be for the defendant.

" 4. If at any time after July, 1883, said Clapp was under the care of a physician for any cause other than inflammation of the bowels, then his answer to the twelfth question was untrue, and the verdict should be for the defendant.

" 5. If at the time said Clapp made his answers to the questions contained in the application made by him to the defendant association he had any disorder, infirmity, or weakness, then his answer to the thirteenth question was untrue, and the verdict must be for the defendant.

" 6. That as it appeared by uncontradicted evidence that said Clapp made a proposal or application for insurance on his life to the New England Mutual Aid Society, in December, 1883,

upon which proposal or application a policy was not issued, his answer to the seventeenth question was untrue, and therefore a verdict must be rendered for the defendant.

" 7. That the representations and agreements contained in the application were a part of the contract of insurance, and were warranties, and, inasmuch as those relating to the sickness of Edward A. Clapp, and his condition of health, and his employment of a physician, were untrue, the plaintiff cannot recover."

The judge refused so to rule, and instructed the jury as follows:

" The only thing that is in dispute is whether or not the deceased acted in good faith in making his answers to the questions that were contained in the application, because, if in his answers to the questions in the application he did not state the thing truly, and intentionally did not state it truly, then the present plaintiff cannot recover in this case if he did not state it truly to his best knowledge and belief.

" The application here contains this clause: 'I, Edward A. Clapp, of West Manchester, county of Essex, State of Massachusetts, do hereby warrant each and all the foregoing particulars and statements to be true, to the best of my knowledge and belief.' And that is the extent to which he can be held. He must make his statements truly, according to his best knowledge and belief. If he stated anything in these answers which was not true, and which he knew or had reason to believe was not true, if he did not make his answers in good faith to any of these questions, then that will be a defence to this action. It also adds, 'and that I have not, in this application for above-named contract, concealed or withheld any material circumstance or information concerning the past or present state of my health or habits of life, and I hereby acknowledge, consent, and agree that any untrue or fraudulent statement made above, by me or any one else, or to any medical examiner of said Massachusetts Benefit Association, or any concealment of facts, by me or any one else, may forfeit and cancel all rights to any benefit under the above-named contract.' He does not use the same language in connection with this clause that is used in the preceding clause, but I say that in law that

language is applicable to the sentence that follows. He says that all the foregoing particulars and statements are true, to his best knowledge and belief, and what is added is to be qualified by the qualification here given in the first place, that it is to his best knowledge and belief. What is added is, 'and that I have not, in this application for the above-named contract, concealed or withheld any material circumstances or information concerning the past or present state of my health or habits of life, and I do hereby acknowledge, consent, and agree that any untrue or fraudulent statement made above by me,' that is, any untrue or fraudulent statement made with the knowledge of the fact that he is making an untrue statement, or knowledge of the fact that he is making a fraudulent statement; and it applies throughout. So that I shall instruct you, that in order to maintain this defence to this action, it is necessary for the defendant to prove that the deceased did not state, to the best of his knowledge and belief, some fact which he did state, and that he did not do the other things provided in this same certificate where the terms are used, to his best knowledge and belief; and it is for you to say whether he did or did not.

"Now, the question arises here as to the burden of proof. Ordinarily, the rule is, in all cases where fraud is alleged, that it must be proved by the party alleging it. A defendant coming into court and alleging that a plaintiff has committed a fraud, is bound to prove it, and the burden of proof is upon him to prove that fraud. A defendant coming into court and alleging that the plaintiff did not make his answers truly, in this case, according to his best knowledge and belief, is bound to show that fact, and to satisfy you of it by a fair and reasonable preponderance of the evidence; and if he does not do it, if he does not satisfy you that he made these statements contrary to his best knowledge and belief and not as he alleges, then, so far as this part of the defence is concerned, you should find for the plaintiff. The burden is on the defendant to prove what he alleges is a fraud, and what he alleges is an untrue statement contained in this application, and if he does not prove it, if he does not convince your minds by a fair preponderance of the evidence, then the plaintiff would be entitled to a verdict. Now, the several questions and answers which have been relied upon

by the defendant in this case are the tenth, eleventh, twelfth, thirteenth, and seventeenth. . . . .

"It is for you to say whether the deceased did answer these questions according to his best knowledge and belief. . . . . If you are satisfied that these questions were answered in good faith, without any intention to defraud the company or to commit any fraud on the rights of the company or the association, if you are not satisfied that the deceased failed to state these facts in his answers according to his best knowledge and belief, you will render a verdict for the plaintiff, because the burden is on the defendant to show you, by a fair and reasonable preponderance of the evidence, that he did not so answer, and if he does not show you that, the presumption is that he did answer according to his best knowledge and belief, and you have a right to decide the case on the evidence."

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions. The case was argued at the bar in January, 1888, and afterwards submitted on the briefs to all the judges.

*E. Avery & A. E. Avery*, for the defendant.

I. The questions and answers contained in the application, which by the terms of the condition set forth in the certificate enter into and form a part of the contract itself, are warranties. *Daniels* v. *Hudson River Ins. Co.* 12 Cush. 416, 423. *Miles* v. *Connecticut Ins. Co.* 3 Gray, 580. A warranty, in insurance, enters into and forms a part of the contract itself. It defines by way of particular stipulation, description, condition, or otherwise, the precise limits of the obligation which the insurers undertake to assume. *Campbell* v. *New England Ins. Co.* 98 Mass. 381, 389. *McCoy* v. *Metropolitan Ins. Co.* 133 Mass. 82.

II. If the application does not form a part of the contract itself, and the answers to the questions contained therein are not warranties, to be strictly and literally true, but are mere representations, as to which substantial truth in everything material to the risk is all that is required of the applicant, (*Phœnix Ins. Co.* v. *Raddin*, 120 U. S. 183, 189,) the questions and answers contained in this application were material to the insurers to enable them to estimate the risk to be assumed; and if the answers in any respect were materially untrue, they avoided the policy, even if they were made ignorantly and in good faith.

The judge erred in refusing to give the first, second, third, fourth, fifth, and sixth requests for rulings asked for. *Curry* v. *Commonwealth Ins. Co.* 10 Pick. 535. *Wilbur* v. *Bowditch Ins. Co.* 10 Cush. 446. *Kimball* v. *Ætna Ins. Co.* 9 Allen, 540. *Towne* v. *Fitchburg Ins. Co.* 7 Allen, 51. *Davenport* v. *New England Ins. Co.* 6 Cush. 340, 341. *Miles* v. *Connecticut Ins. Co.* 3 Gray, 580. *Vose* v. *Eagle Ins. Co.* 6 Cush. 42, 49. *Campbell* v. *New England Ins. Co.* 98 Mass. 381, and cases cited. *McCoy* v. *Metropolitan Ins. Co.* 133 Mass. 82. *Ryan* v. *World Ins. Co.* 41 Conn. 168. *Richardson* v. *Maine Ins. Co.* 46 Me. 394. *Britton* v. *Mutual Benefit Ins. Co.* 3 Th. & C. 220, 442. *Edington* v. *Ætna Ins. Co.* 100 N. Y. 536. *Jeffries* v. *Life Ins. Co.* 22 Wall. 47. *Moulor* v. *American Ins. Co.* 111 U. S. 335. *New York Ins. Co.* v. *Fletcher*, 117 U. S. 519. *Phœnix Ins. Co.* v. *Raddin*, 120 U. S. 183.

III. The judge erred in refusing to give the seventh request for a ruling asked for by the defendant in writing. The application and policy in this suit are substantially the same, so far as the questions involved are concerned, as the application and policy referred to in *McCoy* v. *Metropolitan Ins. Co.*, *ubi supra*, in which *Field*, J., says, "In an action at law in this Commonwealth on such a policy, to recover the amount of the insurance, the application is considered as a part of the contract, and if in fact the representations in it are in a material respect untrue, the action cannot be maintained."

IV. If we assume the true rule of law to be that the defendant was bound to prove that the answers were known by the assured to be untrue, or that he believed them to be untrue, it is respectfully submitted that the defendant sustained this burden, not by a preponderance of opposing or conflicting evidence, but by uncontroverted testimony, the truth of which was not questioned. That the assured knew he was being treated for a physical disorder, infirmity, or weakness by Dr. Wyman, in February, 1885, the very time he made his application, is proved most conclusively, and virtually admitted by the plaintiff; that he knew a policy had not been issued on his application to the New England Mutual Aid Society is as clearly proved as the issuing of the policy by the defendant corporation.

V. The acknowledgment or certificate attached to the application, is divisible into two parts : 1. A warranty that the statements made are true to the best of the applicant's knowledge and belief. 2. An agreement that any untrue or fraudulent statement may forfeit the contract. The terms "untrue" and "fraudulent" are separate or distinct in meaning and intent, and are used with a disjunctive to indicate two distinct and independent states of facts. The legal distinction between them is clear. The one may exist without any intent to deceive, while the other can only exist by reason of such intent. The language in the certificate or policy is as follows: "that the statements and declarations made, &c. are in all respects true." The construction given to these clauses in the charge to the jury was erroneous. The true construction is, that any untrue statement intentionally or ignorantly made would avoid the policy.

*R. M. Morse, Jr.*, for the plaintiff.

DEVENS, J. The certificate or policy on which the plaintiff relies was issued on the condition that " the statements and declarations made by and on behalf of said member in his application to become a benefit member of said association, which are hereby referred to as the basis of this contract, and are a part thereof, and on the faith of which this certificate is issued, are in all respects true, and that no fact has been suppressed relating to his health or circumstances affecting the interests of said association, or their inducement to accept the risk." The application must thus be treated as a part of the contract, — as if it had been incorporated, and thus in terms been made a part thereof. Whether the statements in the application claimed by the defendant to be erroneous are to be treated as warranties which enter into and define, by way of stipulation, description, or otherwise, the precise limits of the obligation which the insurers intended, and which must be literally complied with, whether material or immaterial to the risk, or whether they are representations to be substantially complied with so far as material to the risk, which is often an inquiry of delicacy, does not seem to be of importance in the case at bar. If representations only, they clearly seem to relate to matters material to the risk, and there was much evidence that they were not in fact correct.

The seven rulings requested by the defendant are based upon the theory that it was entitled to a verdict if the answers of Clapp in reference to such matters were in fact untrue, although made honestly and in good faith. Whether it was so entitled or not must depend upon the construction to be given to the acknowledgment or certificate which was subscribed by the deceased as a part of the application, and which from its language must be held to have controlled and governed the answers to which it referred.

This acknowledgment as it is termed is as follows:

" I, Edward A. Clapp, of West Manchester, county of Essex, State of Massachusetts, do hereby warrant each and all the foregoing particulars and statements to be true to the best of my knowledge and belief, and that I have not, in this application for above-named contract, concealed or withheld any material circumstance or information concerning the past or present state of my health or habits of life; and I do hereby acknowledge, consent, and agree that any untrue or fraudulent statement made above, by me or any one else, or to any medical examiner of said Massachusetts Benefit Association, or any concealment of facts by me or any one else, may forfeit and cancel all rights to any benefit under the above-named contract. Dated at Boston, State of Massachusetts, this 13th day of February, 1885. Edward A. Clapp, Applicant."

The presiding judge ruled that the matter to be passed upon by the jury was " whether or not the deceased acted in good faith in making his answers to the questions that were contained in the application, because if in his answers to the questions in the application he did not state the thing truly, and intentionally did not state it truly, then the present plaintiff cannot recover in this case if he did not state it truly to his best knowledge and belief." He further held, that the words " to the best of my knowledge and belief," found in the first clause of the acknowledgment, were applicable to the second clause, and qualified it as they qualified the earlier clause, and thus that the deceased had not consented or agreed that the contract should be forfeited except it were shown that an untrue or fraudulent statement had been made by him with the knowledge or belief that it was untrue or fraudulent.

Undoubtedly the acknowledgment may grammatically be separated into two parts; the first a warranty that the statements made are true according to the best of the applicant's knowledge and belief, and the second an agreement that any untrue or fraudulent statement may forfeit the contract. But, if susceptible of such a grammatical construction, it can hardly have been intended that it should have been thus understood. Nor would it be a natural construction, and one that would suggest itself to an applicant. He could not suppose that, while he was only required to warrant that his answers were true according to his "knowledge and belief," his certificate or policy was to be forfeited if an answer honestly made should prove in fact untrue. The language used in the form of acknowledgment does not suggest any idea so much in the nature of a contradiction as this.

These forms are prepared by the insurer with great care and great minuteness of detail. They are often signed in comparative haste. If the association had intended to impose a forfeiture of his certificate upon the applicant because of an untrue statement, while it had only required him to warrant that his statements were true to the best of his knowledge and belief, a contract so anomalous should have been clearly expressed. It must be presumed that the defendant prepared its forms of application and certificate with the intention both of protecting itself against fraud and of securing the just rights of the assured under a valid contract. It is reasonable that its words should be construed against itself, rather than in such a manner that one dealing with it should by any ambiguity be deceived as to his rights.

The defendant urges that the words "untrue or fraudulent," used in the disjunctive and thus expressing different states of things, show that by the use of the first word it was intended that the policy should be avoided if any material thing was untrue, although stated without fraudulent intent. The connection in which the word is used shows otherwise. In following the earlier clause, it means a statement which is untrue in opposition to the sense in which it has been promised that it shall be true. Again, while in strictness a statement is untrue which is not in precise conformity with the facts, yet in a more general sense the word "true" is often used as a synonym of honest or

sincere, without evasion or fraud.  Such is the sense in which it is used in the acknowledgment.  *National Bank* v. *Insurance Co.* 95 U. S. 673.  *Moulor* v. *American Ins. Co.* 111 U. S. 335. When in the certificate it is said that " the statements and declarations," &c. " are in all respects true," as this must be construed with the application, it must mean that they are true as stated by the applicant to be true, namely, according to his best knowledge and belief.  In this respect the case is quite distinguishable from *McCoy* v. *Metropolitan Ins. Co.* 133 Mass. 82, on which the defendant much relies.

We are of opinion, therefore, that the presiding judge rightly refused the rulings requested.  He also correctly ruled that the burden of proof was on the defendant to show that the representations made by Clapp were false to the best of his knowledge and belief.  *Campbell* v. *New England Ins. Co.* 98 Mass. 381.

The defendant further contends, that, even if the rule be that it is necessary for it to show that Clapp's answers were untrue, and known or believed by him to be so, it has successfully sustained that burden in several instances, and that the jury should have been instructed to render a verdict in accordance with the facts thus established.  As an instance, take that in answer to the seventeenth question, " Has any proposal or application to insure your life ever been made to any company or agent upon which a policy has not been issued?  If so state full particulars."  To this the applicant replied, "No."  The defendant urges that it is proved conclusively by the testimony of Mr. Dyer and Dr. Follett that he had made an application to the New England Mutual Aid Society, of which they were respectively the secretary and the consulting physician, on December 18, 1883, for additional insurance, which application was declined, and, further, that the interviews and other circumstances connected with it, and fully testified to, were such that the deceased must have remembered it, and therefore that the defendant was entitled to a verdict.

We do not find that the question thus suggested is fairly raised by the exceptions.  The defendant did indeed, by its sixth request, desire the court to rule that, as it appeared that Clapp had made application for insurance on his life to the New England Mutual Aid Society, upon which proposal or application a policy had

not been issued, the answer to the seventeenth question was untrue, and therefore the defendant was entitled to a verdict. This request we have heretofore held was erroneous, as it left out the element of Clapp's knowledge or belief, as indeed did the general request that a verdict should be ordered for it. The defendant nowhere requested a ruling that the proof made by it of the application of Clapp to another insurance company, of the refusal or failure of that company to grant a certificate, and of Clapp's own knowledge or belief of these facts, was so conclusively proved that it was entitled to a verdict.

Similar remarks are applicable to the inquiry whether the deceased had any sickness or disease other than rupture before February 13, 1885, the defendant claiming to have shown by the testimony of Dr. Wyman that the answer of Clapp to the eleventh interrogatory was untrue, and asking by its third request that it should be ruled that it was therefore entitled to a verdict.

The case was presented by the defendant on the theory that it was entitled to a verdict if Clapp's answers were shown in any material respect to be untrue. This was rejected by the presiding judge, who held that it must be shown also that such statements were known or believed to be untrue. We nowhere find that the defendant ever requested, in regard to either statement of Clapp which was in controversy, a ruling that the proof that it was false, and that Clapp knew or believed it to be so, was so conclusive that, as matter of law, it was entitled to a verdict. It would not be possible in justice to the plaintiff, therefore, to consider now whether such a request could properly have been made. In each request for a ruling, the defendant omitted the element of Clapp's knowledge and belief. This was the point of conflict between its contention and the position taken by the presiding judge, who throughout his instructions insisted that not only must the answers of Clapp be proved untrue, but that they were so according to his knowledge and belief.

*Exceptions overruled.*