DAVID FLYNN *vs.* MASSACHUSETTS BENEFIT ASSOCIATION.

Suffolk.    January 10, 1890. — October 24, 1890.

Present: FIELD, C. J., DEVENS, W. ALLEN, C. ALLEN, HOLMES,
KNOWLTON, & MORTON, JJ.

*Beneficiary Association — Party Plaintiff — Administrator — Proof of Death.*

An action upon a certificate under seal, issued by a beneficiary association before
the passage of the St. of 1885, c. 183, can only be brought by the administrator
of the certificate holder, and not by the beneficiaries named in the certificate.

A certificate holder in a beneficiary association stated in his application that he
had never had any disease nor been under a physician's care for years.  In an
action against the association, on the issue of the falsity of these statements,
a physician testified that about eight weeks before the application he twice
examined the applicant, and informed him that he had a certain disease, and that
his chances of recovery were very poor indeed.  There was other evidence that
this examination took place after the application was made, and that the phy-
sician's diagnosis was erroneous.  *Held*, that it could not be said, as matter of
law, that a verdict should be returned for the defendant.

If a certificate issued by a beneficiary association provides for payment of the
benefit after " satisfactory proof of death," to be furnished by the sworn certifi-
cates of the attending physician and other persons named, the association can-
not require a certificate from another physician who had not attended the
deceased member for several years before his death.

CONTRACT, brought by the administrator of the estate of Eu-
gene Sullivan, to recover $5,000 on a certificate of membership
in the defendant association, issued to Sullivan for the benefit of
his daughters, Tamzina and Maria.  Trial in the Superior Court,
before *Staples*, J., who, after a verdict for the plaintiff, reported
the case for the determination of this court.  The facts, so far
as material to the points decided, appear in the opinion.

The case was argued at the bar in January, 1890, and after-
wards was submitted on the briefs to all the judges.

*E. Avery*, (*A. E. Avery* with him,) for the defendant.

*J. E. Cotter & C. F. Jenney*, (*G. A. Healey* with them,) for the
plaintiff.

DEVENS, J.   This action is brought upon a certificate, or
contract under seal, issued by the defendant association, dated
February 7, 1885, by which Eugene Sullivan, now deceased, was
made a benefit member of the defendant association, and by
which the association agreed to pay to his two children, Tamzina

and Maria, described as his heirs at law, "in sixty days after satisfactory proof of the death of said member, a sum equal to the amount received from a death assessment, but not to exceed five thousand dollars."

The defendant contends that the action is improperly brought by the administrator of Sullivan, and that it should and could only have been brought by the children named, through their guardian or next friend, they both being as yet in their minority. Where the promise of the insurer in a policy of insurance in the ordinary form is to the insured, his executors, administrators, and assigns, an action cannot be maintained in the name of those for whose benefit the contract is expressed to be made. *Campbell* v. *New England Ins. Co.* 98 Mass. 381. *Bailey* v. *New England Ins. Co.* 114 Mass. 177. In *Flynn* v. *North American Ins. Co.* 115 Mass. 449, it was held that an action on a policy of life insurance under seal, whereby the insurer covenanted with A., his heirs, executors, administrators, and assigns, to pay the sum insured to B. upon the death of A., could not be maintained by B., upon the ground, well sustained by the authorities cited, that none but a party to an agreement under seal could maintain an action at law thereon. See *New England Dredging Co.* v. *Rockport Granite Co.* 149 Mass. 381. The defendant urges, that in a corporation of a beneficiary character, which the defendant is admitted to be, doing business on the assessment plan, a different rule applies; and that to the contractual relation which exists between the insured and the insurer there is added a statutory obligation, which may be enforced by an action in the name of him to whom its benefit is due. The act of 1877, c. 204, (Pub. Sts. c. 115, § 8,) provides that beneficiary corporations may establish by assessment a fund "to be held by such association until the death of a member occurs, then to be forthwith paid to the person or persons entitled thereto, and such fund so held shall not be liable to attachment by trustee or other process." Similar language is used in section 2 of chapter 195 of the Acts of 1882, which largely increased the number of those for whose benefit such corporations could insure. From this language it cannot be inferred that the Legislature intended to provide that an action to enforce such a contract could be maintained by one who was not a party thereto,

or that an action to enforce it could be brought both by the insured's representatives and by the beneficiary. It is intended to provide only for the mode in which the corporation shall collect and disburse its fund, leaving the remedy for any failure to perform its contract as it before existed. In *Rindge* v. *New England Aid Society*, 146 Mass. 286, it was held that the administrator was the proper person to bring the action, and that, although there was in that case an averment that it was brought for the benefit of certain persons who under the statute as it then existed could not lawfully be beneficiaries, this was unimportant, because, if the administrator received the money, this receipt would discharge the defendant's liability, as it would not be responsible for the proper application of the money by him.

We do not consider it necessary to consider the effect of the St. of 1885, c. 183, relied on by the defendant as showing that the action should be brought by the beneficiaries. The certificate in question was dated February 7, 1885, before the passage of that statute, which was approved April 21, 1885, and would be governed by the law as it then existed. If, as the defendant urges, this was intended to add to the contractual undertaking an additional statutory obligation, it could not have been intended to apply to already existing contracts. There is no danger to the interest of the beneficiaries in holding that, upon a certificate such as that sued upon, the action should be brought by the administrator. In the case at bar, the beneficiaries have, indeed, through their guardian, fully assented that the action should be thus brought, and have consented to be bound by the result. But in any proper case, if the administrator should decline to bring the action, the owners of the equitable interest might maintain it in the name and without the consent of the administrator; *Campbell* v. *New England Ins. Co.* 98 Mass. 381; or if there was danger that he would not properly dispose of the funds collected, he could be compelled to do so by judicial proceedings, to which the corporation would be a necessary party. *Rindge* v. *New England Aid Society*, 146 Mass. 286. In the opinion of a majority of the court, this action is properly brought by the administrator of Eugene Sullivan.

The application of the plaintiff's intestate is to be treated as forming a part of his contract. *Clapp* v. *Massachusetts Benefit*

*Association*, 146 Mass. 519. He warranted each of the statements made therein to be true to the best of his knowledge and belief, agreeing that any untrue or fraudulent statements made by or for him should forfeit the insurance. It was contended by the defendant, that Sullivan's answers to certain questions were untrue according to his best knowledge, and were made with knowledge that they were so. The burden of proving this was on the defendant association. *Clapp* v. *Massachusetts Benefit Association*, 146 Mass. 519. Upon this subject, in accordance with the defendant's request, the court instructed the jury that, " if any of the answers were untrue and the said Sullivan knew or had reason to believe that his answers were not true, or if his answers were not made in good faith, the plaintiff cannot recover in this action, and the verdict should be for the defendant." The defendant claims to have shown, by uncontroverted evidence, that the answers to the tenth, eleventh, and twelfth questions made by Sullivan were untrue to the best of his knowledge and belief when he made them. It contends, therefore, that the jury should have been so instructed, and that the inquiry whether the statements were thus untrue should not have been submitted, as there was no conflict on that point, and the evidence was conclusive. It is not easy to say, when the burden is on one party to prove affirmatively a proposition, that, even if the only witnesses examined sustain it fully, it becomes the duty of the jury, as matter of law, to return a verdict in accordance with the testimony as given. It does not follow, because it may properly be said under certain circumstances that there is no evidence to sustain a proposition, that it can be said conversely that there is evidence upon which the jury should, as matter of law, render a verdict. In the one case it is assumed in favor of the party seeking to establish the proposition, that his witnesses are believed, and therefore every question of fact is eliminated. That which remains is the question of the inference to be drawn from the facts, which may be one of law only. In the other case no similar assumption can be made, and even if it should be the duty of the jury to return a verdict in accordance with the testimony of the witnesses, should they be believed, the question of fact would still remain whether they should be believed.

We have no occasion, however, in the case at bar, to discuss this matter, as we are not prepared to say that the defendant proved by uncontroverted testimony the propositions it sought to establish. The answers upon which it principally relies, as shown to be intentionally untrue, are those made by Sullivan in his application, and are especially the following: Question 10. "Have you any disease of the urinary organs?" Answer. "No." Q. 11. "What sickness, disease, or injury have you ever had?" A. "None to my remembrance." Q. 12. "How long since you were under the care of a physician, and for what cause?" A. "Years ago, for measles." Q. 13. "Have you now any disorder, infirmity, or weakness?" A. "No." It was for the defendant to show that the answers thus recited were consciously untrue, and it claims to have done so both by direct and by circumstantial evidence. Whether they were so depended largely on the testimony of its witness, Dr. Plympton, who stated that he saw Sullivan first on December 9, 1884, and that on his second examination, on December 10, 1884, he was satisfied that Sullivan had Bright's disease of the kidneys; that he informed Sullivan of the fact, that his chances of getting well were very poor indeed, and also that he was a doomed man; he might live six months or three years, it could not be told which. Dr. Plympton also described in detail the examinations made by him, although he had not preserved minutes of them, and the various tests adopted by him to ascertain the presence of albumen in the urine of Sullivan, with a view of determining the existence of Bright's disease. Dr. Plympton also testified that the last time he saw Sullivan was at his house on May 14, 1885, when he was discharged as a physician, and also described the treatment adopted by himself. He saw the patient professionally also, as he states, several times after his examination on December 10, 1884, both during the remainder of that month and in the January following, including January 31, 1885, the day when the application was made, as well as in February and March following. On the other hand, Dr. Cragin testified that he examined Sullivan on January 31, 1885; that he was in good health; that he was as strong and robust as any man in Norwood; that he examined his urine, and that there was no sign or indication of Bright's disease. Dr. Cragin also testified that he treated Sullivan at

various times up to the time of his death, which was in January, 1888, and that he never had Bright's disease. There was evidence from an expert, Dr. Fifield, that, from the description given by the witnesses of Sullivan's condition, he never had Bright's disease, which testimony was supported by that of another expert, Dr. Cilley. The plaintiff contended, not only that the diagnosis of Sullivan's condition by Dr. Plympton was erroneous, but also that his examination of Sullivan did not take place until after January 31, 1885, and for this purpose introduced the testimony of Ellen Sullivan, the sister of the insured, who testified that she noticed no trouble with her brother, except a cold, until about April, 1885; that late in March, or early in April, she called on Dr. Plympton; that he informed her of having examined her brother two or three days before, and expressed the opinion that he had Bright's disease. The plaintiff also introduced the evidence of other witnesses as to the physical condition and appearance of Sullivan, and to his strength as shown by the labor which he performed, as tending to prove that he did not have this disease at the time of the alleged examination by Dr. Plympton, nor any serious disease until a later period, which the defendant met by evidence from other sources of Sullivan's weak physical condition.

Without recapitulating, even in a condensed form, all the evidence on this or the other points of the case, it sufficiently appears that a conflict existed on the important inquiry when the examination made by Dr. Plympton took place, and as to its correctness. If these examinations took place after January 31, 1885, they had but little relevancy to the case; while if they took place previously, and were correct, and included the information to Sullivan of his almost desperate condition, they were decisive against the plaintiff. The accuracy of Dr. Plympton in his statements was a question that could not be withdrawn from the jury, and was submitted to them under proper instructions. On examining the requests made and the charge actually given, we do not perceive that anything was omitted necessary to aid the jury in a fair consideration of it. By their answers to the special questions submitted to them, the jury have found that the answers to the interrogatories above recited were not, according to the knowledge and belief of Sullivan, untrue.

Nor has the defendant any just ground of complaint concerning the instructions as to the proof of death. All the information was given that was required by the terms of the certificate. The fourth clause of the certificate required that satisfactory proof of death should be furnished by the sworn certificates of the attending physician and other persons named. Sworn certificates from all these persons were furnished, and the defendant had no right, as it contended it had, to require a certificate from Dr. Plympton, who had not attended the deceased for several years, and thus to provide itself with a statement from a witness friendly to itself, who was not one of the class named in the certificate. The words "satisfactory proof of the death," in the body of the certificate, are explained and limited by the fourth clause above referred to, which defines the mode in which, and the persons by whom, this proof is to be furnished. *Clapp* v. *Massachusetts Benefit Association*, 146 Mass. 519, 530.          *Judgment on the verdict.*