ATTORNEY GENERAL *vs.* SUPREME COUNCIL AMERICAN
LEGION OF HONOR.

HALL'S CLAIM.

Suffolk.    March 18, 22, 1910. — May 24, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Equity Pleading and Practice*, Agreement as to facts, Appeal.   *Fraternal Benefi-
ciary Corporation.   Trust.*

In the matter of seventeen appeals from a decree of a single justice disallowing
the claims of beneficiaries under certificates of a fraternal beneficiary corpora-
tion to be paid the balances of death benefits alleged to be due upon their cer-
tificates out of an emergency fund in the hands of the receiver of the property
of the corporation appointed under R. L. c. 119, § 19, the receiver and the attor-
neys for the several claimants agreed " that the foregoing statements of facts, as
set out in this the fourth report of the receiver, together with the references
therein made, contain all of the facts in the respective claims," with certain addi-
tions there specified.   At the beginning of his fourth report the receiver made the
following statement: " The facts of each claim as presented to the receiver . . .
are specifically set out in the following pages of this report.   All the evidence
offered by claimants in proof of these several claims was presented in the form
of affidavits, and was received subject to such objections as might be made
thereto upon the filing of this report.   The statement of facts of each claim has
been submitted to counsel of record for correction and approval, and the same
are filed as agreed facts."   In some of the claims, affidavits on both sides, or
abstracts of them, were given after a statement of the facts and these affidavits
were headed "Further Proof."   *Held*, that the agreement of the parties was
that the facts thus before the court and called " agreed facts " should be taken
to be admitted to be true, that the claims were submitted for decision upon
these admissions and the affidavits, and that the claims were not to be treated
as having been presented to the court for decision upon agreed statements of
facts.

Upon an information in equity coming to this court by an appeal from a decree
of a single justice, where no witnesses appeared before the single justice and
all the evidence consisted of statements of facts made in the report of a receiver,
which were agreed by the parties to be true, and of affidavits or abstracts of
them, this court stands where the single justice stood and his decision creates no
presumption.

The character and operation of fraternal beneficiary corporations described by
LORING, J.

Even if a fraternal beneficiary corporation, on account of being a mutual organi-
zation, in some respects owes a fiduciary duty to its members, it does not owe
such a duty to the beneficiaries under the certificate of a member after the
member's death, and the right of such beneficiaries to recover a death benefit is
a right in contract, which must be proved as such.

Although an emergency fund of a fraternal beneficiary corporation under R. L.
c. 119, §§ 7, 8, is held as a trust for those who are entitled to death or disabil-

ity benefits, there is no fiduciary relation to any person until his right to share in that fund has been established at law as a matter of contract.

Upon a claim of the beneficiaries under a certificate of a deceased member of a fraternal beneficiary corporation to be paid a balance of $3,000 of a death benefit of $5,000 alleged to be due out of an emergency fund in the hands of the receiver of the property of the corporation appointed under R. L. c. 119, § 19, it appeared that one of the beneficiaries had a conversation with the "local officers," who told her that " the assessment was lowered and they were obliged to reduce the $5,000 certificates to $2,000 or go into bankruptcy, or give it to a receiver and get nothing; that the beneficiary said she believed that if she did not take that amount she would not get anything," and that thereupon the beneficiaries accepted a draft for $2,000 and gave a release under seal. It appeared that the above statements made by the "local officers" were substantially true. It further appeared that at the time the settlement was made and the release was given, there had been a decision of this court that the by-law under which the death benefit had been reduced from $5,000 to $2,000 was invalid, that three like decisions had been made in other jurisdictions, and that no one in behalf of the corporation had informed the beneficiaries of these decisions. *Held,* that the beneficiaries had not proved that the release was procured from them by misrepresentation, and that the release could not be set aside on the ground that the agents of the corporation had failed to disclose the material fact that the by-law had been held to be invalid, because the corporation did not stand in a fiduciary relation toward the beneficiaries which imposed upon it the duty of disclosing the fact to them.

LORING, J. This is one of seventeen appeals from a decree of a single justice,* dated October 29, 1909, disallowing claims of the appellants offered by them for proof against the fund in the hands of the receiver in this case. The only fund in the hands of the receiver is the residue of the emergency fund of the defendant corporation. All these claims are for the difference between the amount originally named in the certificate and that already paid to the claimants. One payment has been made in each instance. In some instances $2,000 has been paid under by-law 55 (cutting down the amount of all benefits to at least $2,000) declared to be invalid in *Newhall* v. *American Legion of Honor,* 181 Mass. 111, and in the rest $1,900 has been paid under that by-law and by-law 72 charging against each death benefit (if not paid by the member during his lifetime) a sum equal to five per cent of the amount of the death benefit as a contribution to the emergency fund. This also was declared to be invalid in *Newhall* v. *American Legion of Honor,* 181 Mass. 111.

---

* *Braley, J.*

There is a preliminary question as to the footing on which this and the other cases giving rise to these seventeen appeals were submitted to the court.

The receiver and attorneys for the several claimants agreed " that the foregoing statements of facts, as set out in this the fourth report of the receiver, together with the references therein made, contain all of the facts in the respective claims," with certain additions there specified. At the beginning of his fourth report the receiver makes these statements: " The facts of each claim as presented to the receiver . . . are specifically set out in the following pages of this report. All the evidence offered by claimants in proof of these several claims was presented in the form of affidavits, and was received subject to such objections as might be made thereto upon the filing of this report. The statement of facts of each claim has been submitted to counsel of record for correction and approval, and the same are filed as agreed facts."

There are several cases where the affidavits (or an abstract of them) on both sides are given after a statement of facts, and these affidavits are headed by the words " Further Proof." We are of opinion that the facts stated to be " agreed facts " have been agreed to be taken to be admitted to be true, and that the cases were submitted for decision upon these admissions and upon the affidavits; and that these cases were not submitted as cases stated or on agreed facts tantamount to a case stated. We shall deal with them on that basis.

As there were no witnesses before the single justice, this court stands where he stood. *Harvey - Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138.

In Hall's claim (claim 131), it is stated: " That the beneficiary had a conversation with the local officers." We assume that this means that one of the two beneficiaries named in the certificate had a conversation with the " local officers." The report then goes on to state " who [the local officers] said to her, ' the assessment was lowered and they were obliged to reduce the five thousand dollars ($5,000) certificates to two thousand dollars ($2,000) or go into bankruptcy, or give it to a receiver and get nothing '; that the beneficiary said she believed that if she did not take that amount she would not get anything ";

and thereupon, on July 18, 1902, the two beneficiaries accepted the draft and gave a release under seal.

It is not necessary for the beneficiaries, in making out a right to rescind this release, to prove a case of fraud and deceit by the defendant corporation through agents authorized to make the false representations relied upon by them. It would be enough if the beneficiaries should prove that the release had been obtained by misrepresentations made by an unauthorized person. That would bring the case within the doctrine acted upon in *Rackemann* v. *Riverbank Improvement Co.* 167 Mass. 1, 4, namely: " The defendant cannot retain what is beneficial in the transaction, while disclaiming what is onerous. When it repudiates the means by which the plaintiffs were brought to contract with it, this entitles the plaintiffs to give up the contract altogether, unless there is some other objection to their doing so. The rule in this respect is the same, whether the unauthorized act of the agent was fraudulent, or merely a matter of warranty or promise."

But in our opinion the claimant has not proved that the release was procured by misrepresentation. We understand the statement made by the " local officers " to be a statement as to the facts which led up to the adoption in August, 1900, of by-law 55, which went into effect on October 1, 1900, and that these " local officers " meant by the word " they " (in the statement set forth above) the representatives duly chosen of all the members of the defendant corporation at the session held in August, 1900, when by-law 55 in its new form was adopted.

That statement appears to have been substantially true. It is set forth in the facts on which this case was submitted for decision " that the change in the by-laws reducing certificates from five thousand dollars ($5,000) to two thousand dollars ($2,000), and the reason and necessity therefor, were long considered by the Order and the members thereof, in the meetings of the Supreme, Grand, and local councils, and that it was twice before the annual meetings of the Supreme Council, at which all members and councils were represented under the by-laws (Nos. 5, 37, 42, 1900), and that before said change was made advice was taken by the Supreme Council from 'Judge John Franklin Fort of Newark, New Jersey, Mr. John L. Farrell of Texas,

John Haskell Butler of St. Josephs, and several other lawyers, also from the Insurance Commissioner of the State of Massachusetts' (p. 35, Appeal Book, *McCloskey* v. *Supreme Council American Legion of Honor*), that said change was made in good faith." It is also stated in this fourth report that : " The membership of the Order on June 30, 1900, was 13,107 ; on June 30, 1901, 8,618 ; on June 30, 1902, 6,386," and it appears from the proceedings of the fifth annual session (handed to the court as part of the record in this case) that the membership of the order on June 30, 1883, was 51,361.

In considering the truth of the statement as to what led up to the amendment of by-law 55, it is necessary to understand the kind of corporation the defendant was and what its financial resources were.

The defendant is a fraternal beneficiary corporation organized in 1879 under St. 1874, c. 375, as amended by St. 1877, c. 204, re-enacted in Pub. Sts. c. 115, §§ 2, 8. St. 1874, c. 375, was a general act concerning associations for religious, charitable, educational and other purposes. The organization and business of fraternal beneficiary organizations was put on a separate footing by St. 1888, c. 429. That act has been often amended and is now to be found with its amendments in R. L. c. 119. See in this connection *Palmer* v. *Northern Mutual Relief Association*, 175 Mass. 396.

It appears from the facts stated in the report in the case at bar that although applications for membership are presented in the first instance to a subordinate or local lodge or council and must be acted upon there before they are presented to the corporation itself, it is the corporation itself which decides whether the certificate is or is not to issue. It also appears that until the corporation issues its certificate no contract comes into existence between the corporation and the member, and that when the certificate is issued the contract which comes into existence is a contract between the corporation and the "companion " to whom the certificate is issued.

By the terms of the certificates issued by the defendant corporation, it agreed to pay to the beneficiary a sum named in the certificate usually called a death benefit. A limitation was put on the absolute liability of fraternal beneficiary corporations

(in cases where it was applicable) by St. 1899, c. 442, § 11 (now R. L. c. 119, § 6), namely: Where one full assessment on each member would not amount to the death benefit named in the certificate, the amount to be paid shall not exceed the amount of such full assessment, but this shall not apply until the emergency fund shall have been exhausted.

These fraternal beneficiary corporations have no capital stock. The principal source of the corporation from which to pay death benefits consists in assessments upon its members. The amount of assessments to be paid by each member is stated in a table set forth in the by-laws. In addition to assessments this corporation had an emergency fund. We say that the defendant had an emergency fund in addition to its assessments because that fund is a fund (as its name implies) to meet the emergency which arises if the assessments do not realize enough to pay the death benefits. The proportion which these two bear to each other is shown by the financial statement made by the receiver on which this case was submitted to the court for decision. From this it appears that between October 1, 1900, and July 18, 1902 (a period of a little more than a year and a half) the corporation received from assessments of the reduced amount due under by-law 55, $1,358,040.48, and the amount of the emergency fund on July 18, 1902, was $378,420.17. That is to say, the whole emergency fund was less than twenty-seven per cent of the sum realized by assessments in about a year and a half.

It is apparent that where new members do not join such a corporation the ratio of deaths among the survivors of the old membership would be greater than the average, and that it would be cheaper for a member to forfeit what had been paid than to continue to pay assessments under these conditions in the hope of securing a death benefit to his beneficiary.

That was the kind of corporation the defendant was, and that was the kind of financial situation it had to face.

It appears as a fact that the membership of the defendant corporation had decreased from 51,361 on June 30, 1883, to 13,107 on June 30, 1900. Beyond that the exact condition of this corporation is not given. But in place of that there is the

general statement quoted above that the reduction in the amount of death benefits was made in good faith on competent advice and after long consideration of the necessity therefor.   In our opinion it is sufficiently plain that the condition of the defendant corporation was the same as that more particularly proved in *Reynolds* v. *Royal Arcanum*, 192 Mass. 150.   That is to say, it is sufficiently plain that unless something was done the assessments would fail to pay the death benefits, the emergency fund would then be resorted to, and there would be nothing left for those who survived that condition of affairs.

The burden was on the plaintiff to prove that the statement made by the " local officers " was not true.   They have not supported that burden.   On the contrary so far as the evidence goes the statements made by the " local officers " appear to have been true.   The evidence shows that unless something had been done in 1900 the order would have become bankrupt, and if it had become bankrupt those who survived that event would have got nothing or substantially nothing.   The most that a survivor could have got would have been his share of the emergency fund if the defendant's affairs were wound up before that fund was exhausted in paying death benefits which had accrued. That is almost nothing.

The statements made by the " local officers " do not appear to have been proved to be untrue.

It is stated that the beneficiary said that " she believed that if she did not take that amount she would not get anything."   Why she entertained that belief is not stated.   It is not stated that either the defendant or the " local officers " told her that if she did not take the $2,000 she would " get nothing."

The claimants contend however that the defendant corporation stood in a fiduciary relation to the beneficiaries; and that by reason of that fact it was under an obligation, in making payment of the amount due under the certificate, to disclose to them all material facts.   That at the time of the payment to these beneficiaries on July 18, 1902, it was a material fact that four cases had been tried involving the validity of by-law 55, all of which had been decided against the corporation, and that fact was not disclosed to these beneficiaries.   These cases were:

(1) The decision of this court in *Newhall* v. *American Legion of Honor*, 181 Mass. 111, made on March 12, 1902; (2) that of the Supreme Court of New York at a trial term on April 30, 1901, in *Langan* v. *American Legion of Honor*, 70 N. Y. Supp. 663, and of the decision of the Appellate Division affirming it on March 3, 1902 (69 App. Div. (N. Y.) 616); (3) that in *Gaut* v. *American Legion of Honor*, 107 Tenn. 603, decided on October 26, 1901; and (4) that in *Getz* v. *American Legion of Honor*, 109 Fed. Rep. 261, made on June 3, 1901, affirmed on appeal in *American Legion of Honor* v. *Getz*, 112 Fed. Rep. 119, on December 4, 1901. All of these decisions involved the validity of the new by-law and were (as we have said) adverse to the corporation.

The only relation between the beneficiaries (whose rights have been assigned to and are now put forward by this claimant) and the defendant corporation arose from the fact that they are the beneficiaries named in the certificate issued by the defendant to James D. Hall, the member here in question. Until James D. Hall died the beneficiaries had no rights against, nor relations with, the defendant corporation. *Proctor* v. *United Order of Golden Star*, 203 Mass. 587.

It may be that the defendant corporation, being a mutual organization, owed a fiduciary duty to its members in some respects. But that fiduciary duty, if it ever existed, was owed to Hall and came to an end when Hall died. It did not go so far as to include a duty, after the death of the member, to inform the beneficiaries, or any one claiming in the member's right, of facts which were no part of the proceedings of the corporation or its officers, and which were important only as affecting unfavorably the defense of the company to the claim of the beneficiaries, after the parties had come into adverse relations in reference to the collection of the claim. When Hall died the defendant, if it owed the beneficiaries anything, owed them a sum of money by virtue of the contract stated in the certificate issued by it to Hall. That was a right resting in contract. With respect to the beneficiaries and that right the defendant did not stand in a fiduciary relation.

It was originally held that those contract rights could be enforced only in the name of the administrator or executor of

the deceased member.   *Flynn* v. *Massachusetts Benefit Association*, 152 Mass. 288.   But it is now settled on a broad construction of the statutes that those contract rights must be enforced by the beneficiaries.   *Dean* v. *American Legion of Honor*, 156 Mass. 435.

This construction of those statutes was adopted on the ground that the money due under the certificate is money in the hands of the corporation due to the beneficiary, and for that reason it is a case where an action can be maintained by one not a party to the contract under the first class of exceptions stated in *Mellen* v. *Whipple*, 1 Gray, 317.

The beneficiaries have argued that the emergency fund is a trust fund and that by reason of that fact the defendant stands in a fiduciary relation to the beneficiaries.   The emergency fund is a trust fund.   Of that there is no doubt.   *Palmer* v. *Northern Mutual Relief Association*, 175 Mass. 396.   It was pointed out in that case that while the beneficiary association is a going concern the question whether a person has a claim against the corporation is one question and the question whether, when that claim is made out, it is a claim which entitles its owner to share in the emergency fund, is a separate and further question. To make out the first the beneficiary must bring an action at law.   To make out the second he must bring a bill in equity after he has recovered judgment in the action at law. See *Palmer* v. *Northern Mutual Relief Association*, 175 Mass. 396, 398.

It follows that when a beneficiary has established his right to the death benefit named in the certificate or part of it, the corporation comes under a fiduciary relation to the beneficiary as one of the persons entitled to share in the emergency fund.   But that does not affect the relation between the corporation and the beneficiary named in the certificate, so far as the question is concerned whether anything is due under the certificate as a contract.   So far as that question is concerned the only relation between the two is that growing out of a contract with the member for the payment of money which, if due, is due to the beneficiary.

The case of *Blair* v. *American Legion of Honor*, 208 Penn. St. 262, is relied on as a case in which it was decided that the

defendant corporation stands in a fiduciary relation to the beneficiaries named in its certificates. There is a sentence or two in the opinion in that case which bears out that contention. But that point was not decided in that case. That case came up on demurrer. It was a bill in equity brought by the beneficiary named in the policy to Henry C. Blair (which we shall take up later on) alleging that "she had no knowledge of the by-law which enacted that the face value of the certificate should be paid only so long as the emergency fund was not exhausted. The officer or cashier of the defendant, when she made the request for the payment, then informed her that the order had adopted a resolution that no member should be paid more than $2,000, and that from this sum would have to be deducted five per cent, or $100, leaving to be paid to her only $1,900, and that she would have to take that or nothing." That relying on that she took $1,900; that later on she learned of the by-law above referred to and brought this bill to be reinstated and for a discovery of the condition of the emergency fund. As we shall see later, there was no such by-law as that alleged in that bill. But on the allegations of the bill there was a fraudulent misrepresentation. In the court below the bill was dismissed because the plaintiff had an adequate remedy at law. On that point the Supreme Court differed from the inferior court; and the opinion is devoted to a discussion of that point. We know of no case in which it has been decided that (so far as the question of there being anything due as a death benefit under a certificate is concerned) a fraternal beneficiary corporation stands in a fiduciary relation to the beneficiary. If it does, *a fortiori* a mutual fire insurance company would stand in a fiduciary relation to a policy holder in a contest as to the amount due under one of its fire policies.

After a careful consideration of the opinion in *Blair* v. *American Legion of Honor, ubi supra,* and of the case of *Commonwealth* v. *Equitable Beneficial Association,* 137 Penn. St. 412, referred to in it, we are of opinion that the defendant corporation does not hold a fiduciary relation to the beneficiary named in one of its certificates so far as its right to the benefit therein named, or part of it, is concerned.

We are therefore of opinion that the release given by the

beneficiaries on July 18, 1902, is binding, and the decree disallowing this claim must be affirmed.

*So ordered.*

*H. A. Wyman,* receiver, *pro se.*

*S. C. Bennett,* for the claimant.

*J. J. Higgins & A. L. Goodwin,* for the members in good standing.