RALPH K. VEAZIE, administrator, *vs.* EDGAR W. STAPLES & others.

Essex.    January 6, 1941. — May 27, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, COX, & RONAN, JJ.

*Marriage and Divorce,* Validity of marriage. *Probate Court,* Findings by judge, Appeal.

Upon the issue of fact before this court on an appeal from a decree by a judge of probate involving a finding that a second ceremonial marriage of a man was valid, this court determined, contrary to that finding, that the weight of the reported evidence, all of which of a substantial nature was contained in public records, documents and depositions, required a finding that a previous marriage of the man had not been dissolved at the time of the second marriage, and therefore that the second marriage was invalid.

PETITION, filed in the Probate Court for the county of Essex on December 4, 1939, by the administrator of the estate of Fred W. Young, late of Lynn, for partial distribution.

The case was heard by *Costello, J.*

*P. F. Shanahan,* (*E. J. Callahan* of Minnesota with him,) for Edgar W. Staples and others, appellants.

*J. H. Devine,* (*J. F. Groden,* & *W. Wadleigh* of New Hampshire with him,) for Bessie A. Clarkson, appellee.

*S. Parsons,* for the petitioner, was in court but neither argued nor presented a brief.

LUMMUS, J.    Fred W. Young of Lynn died intestate on February 10, 1939, leaving as heirs and next of kin only

first cousins. The status of four of them is not questioned. The fifth, Bessie A. Clarkson, is admittedly the daughter, legitimate or illegitimate, of James Young, who was a brother of the father of the intestate, by a woman whose maiden name was Sarah F. Twombly. James Young as early as 1867 assumed the name of James Wright. The decisive question is whether Bessie A. Clarkson was a legitimate child of James Young *alias* Wright, and that depends upon whether her parents were lawfully married. The judge of probate decided in her favor, and entered a decree for distribution of the estate among five first cousins of whom she was one. The others appealed. The evidence is reported, but no express findings of subsidiary facts were made.

It appeared that James Young and Abigail A. Barker, both of Gilmanton, New Hampshire, were married there by a clergyman on March 31, 1842. In the early spring of 1856 they went West beyond the Mississippi River with their children. He deserted her there, and late in 1857 she and the children returned to Gilmanton. There was evidence by deposition that about 1859 James visited her in Gilmanton, seeking a reconciliation, and remained with her about a week. They never lived together afterwards. About 1861 she moved to Pittsfield, New Hampshire, where she lived until her death on April 21, 1912. There was evidence by deposition that in 1878 she obtained $1,000 from James, which she used to buy a house in Pittsfield.

On May 15, 1867, James Young, under the name of James Wright, describing himself as of Boston, Massachusetts, went through a ceremony of marriage at Dover, New Hampshire, with Sarah F. Twombly of Durham, New Hampshire. Where he had been since 1859 did not clearly appear. Nothing was said in the certificate of marriage as to any prior marriage. A son, now dead, was born to them on December 31, 1867. Some time later they moved to Jamaica, Long Island, where their daughter, now Bessie A. Clarkson, was born in 1874. About 1883 they came to Epping, New Hampshire. Epping is about eighteen miles from Pittsfield, where Abigail A. Young was living.

On February 6, 1885, Abigail A. Young filed in the Su-

preme Court of New Hampshire a libel for divorce against James Young for alleged abandonment and alleged adultery with Sarah F. Twombly. He was served in hand with a summons on February 13, 1885. Soon afterwards a horse stepped on his foot, gangrene set in, and after three successive amputations of his leg he died on March 9, 1885. After his death the libel was dismissed upon the motion of the libellant.

On the day he died, James Young *alias* Wright made his will by which he gave one dollar each to his five children named Young and his two children named Wright, one of them being Bessie A. Clarkson, and the residue "to Sarah F. Wright," who was appointed executrix. This will was proved "in common form" on March 18, 1885. On the petition of Abigail A. Young, who claimed to be the widow, the case was reopened, but after hearing the will was again proved and allowed by the Probate Court on July 21, 1885.

On September 25, 1885, Abigail A. Young and her children filed a bill in equity in the Supreme Court of New Hampshire against Sarah F. Wright, alleging that the named plaintiff and not the defendant was the widow of James Young *alias* Wright, that the defendant held real estate under a secret trust for him, and that equitably it belonged to the plaintiffs. The defendant in her answer said: "that said Abigail is the widow of said deceased and the other complainants are his children and only heirs-at-law she does not know, and requires proof of these allegations in said bill." She denied any trust. She admitted "that the said James Wright occupied said first described land at the time of his death, but she says that he occupied the same with her, she understanding and believing herself to be the lawful wife of the said James during the time of such occupation."

Finally, on February 3, 1886, an agreement signed by counsel was filed in the Supreme Court of New Hampshire, dismissing the bill in equity without costs, dismissing an appeal from the decree of July 21, 1885, allowing the will, and affirming that decree.

Sarah F. Wright, as she was called, apparently continued to live in Epping until her death in 1922.

A ceremony of marriage has the technical effect, either of· *prima facie* evidence of its validity, or of casting the burden of proof upon the party denying its validity. *Vergnani* v. *Guidetti,* 308 Mass. 450, 454, 455. But where there are two successive ceremonial marriages of the same man to different women, it is at least doubtful whether any technical effect is given to the second one by assuming the dissolution of the first one. *Kelly* v. *Drew,* 12 Allen, 107. *Hyde Park* v. *Canton,* 130 Mass. 505. *Commonwealth* v. *McGrath,* 140 Mass. 296. *Turner* v. *Williams,* 202 Mass. 500. Notes, 34 Am. L. R. 464; 77 Am. L. R. 729. See also *Sampson* v. *Sampson,* 223 Mass. 451, 464; *Chandler* v. *Prince,* 217 Mass. 451; *Lexington* v. *Ryder,* 296 Mass. 566. Even if such a technical effect were given to the second marriage, at most it would be decisive of the validity of that marriage only where no evidence of its invalidity appeared or the evidence for and against its validity rested in equilibrium. Neither of these situations exists in this case.

The question before the Probate Court and before us on appeal is one of fact. In favor of the validity of the second marriage is testimony, presented by deposition, and admitted apparently under G. L. (Ter. Ed.) c. 233, § 65, that James declared that he had divorced Abigail, and that Sarah declared that she would not have gone through a ceremony of marriage with him if he had not done so. Although searches of the divorce records in certain counties of New Hampshire revealed no divorce between James and Abigail, the possibility of a valid divorce elsewhere, perhaps in the West, was not excluded.

On the other hand, the facts that James did not speak of Sarah as his wife in his will, and that Sarah asserted her status as his widow but feebly in her answer to the bill in equity (*Clarke* v. *Taylor,* 269 Mass. 335), tend against the validity of the second marriage. Evidence presented by deposition was to the effect that Abigail said, possibly between 1878 and 1885, that she had never sought a divorce, that James could not obtain one, and that they never

were divorced. Evidence presented by deposition was to the effect that Abigail declared throughout her life that she was the wife or widow of James. There was oral testimony that in her burial lot in Pittsfield, New Hampshire, there is a monument inscribed with her name and his, and evidence by deposition that her children caused it to be so inscribed to carry out her expressed wish.

The decision of this case does not depend upon the credit to be given to direct testimony presented orally before the Probate Court. All evidence of substantial importance was contained in public records, documents and depositions. What little oral testimony there was, was indecisive and insignificant upon the question whether James Young *alias* Wright was ever divorced from his first wife. The probate judge was in no better position than we are to decide that question of fact. Consequently we owe no deference to his decision. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138, 142, 143. *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow,* 203 Mass. 159, 170. *Attorney General* v. *Supreme Council American Legion of Honor,* 206 Mass. 158, 160. *Hutchins* v. *Mead,* 220 Mass. 348, 349. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 333, 334. *Berry* v. *Kyes,* 304 Mass. 56, 57. In *Edwards* v. *Cockburn,* 264 Mass. 112, 120, 121, nothing is said to the contrary. In our opinion the weight of the evidence favors the view that James Young *alias* Wright never was divorced from his first wife.

We do not find that James entered into his marriage with Sarah in good faith, and consequently we cannot find that Bessie A. Clarkson was made legitimate by N. H. Pub. Laws (1926) c. 287, § 20,[1] even if that statute applies where the parents have long been dead.

The decree must be reversed. Costs and expenses of this appeal are to be in the discretion of the Probate Court.

*Ordered accordingly.*

---

[1] This section read as follows: "Legitimacy. No decree of divorce shall affect the legitimacy of a child born or begotten in lawful matrimony, unless it shall be so expressed in the decree, and children born of a marriage entered into in good faith by the parties thereto shall be regarded as legitimate children and their legitimacy shall not be affected by a decree of nullity, unless it shall be so expressed in the decree." — REPORTER.