RALPH E. FORBES & others *vs.* JAMES THORPE & others.

Suffolk.    March 21, 22, 1911. — September 6, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Equity Jurisdiction*, For an accounting, To relieve from results of fraud, To reach and apply equitable assets.    *Fraud.    Agency.    Equity Pleading and Practice*, Appeal *in forma pauperis*, Cross bill.    *Partnership.    Corporation*, Liability in equity for results of fraud of partnership which corporation succeeds.    *Statute of Frauds.*

If, in a suit in equity for an accounting against an agent who had undertaken by contract to sell certain personal property for the plaintiff, the contract providing that, if all the property was not sold by a certain date, the agent would purchase it at a price which with previous sales would yield the plaintiff not less than a certain value for which all of it had been appraised, it appears that the defendant in the performance of the contract and in its final settlement defrauded the plaintiff, and that in his dealings with the defendant the plaintiff acted with reasonable care under the circumstances, it is no ground for not affording relief to the plaintiff that, by constant and suspicious watching on his part, he might have discovered and have prevented the fraud.

In a suit in equity in the Superior Court against three persons, alleged to have been partners jointly participating in a fraud committed upon the plaintiff, and against a corporation which was alleged to have succeeded the partnership and to be chargeable with the results of the fraud, relief was granted against all of the defendants and they all appealed.    At the hearing before this court one of the defendants did not file a brief either personally or through counsel as required by Rule 2 relating to practice before the full court, and did not appear in person or by counsel to argue his appeal.    It was said by counsel for other defendants that he was without money to prosecute the appeal.    Under such circumstances, *it was stated*, that, in the absence of a statute or rule definitely covering the case, the rule of English chancery practice ordinarily would prevail and the appeal would be dismissed; but *in the present case*, this court, expressly stating that the case should not be treated as a precedent, considered the appeal on its merits and dismissed it.

There never has been in this Commonwealth an instance of appeal *in forma pauperis*, which still is allowed in England, from a decree in a suit in equity. Per RUGG, J.

Joint ownership of property by several, use of it in a business, sharing of profits and division of net proceeds upon dissolution make the part owners partners in the business and liable for its losses as well as beneficiaries of its profits, in the absence of a specific agreement defining by express terms the status of the part owners.

A partnership consisting of two partners made a contract with the owner of certain machinery to sell it for him. In the performance of the contract by the partnership the owner was defrauded, the prices at which sales had been made having been reported falsely to the owner and certain sales having been made that were not reported at all. One, who was a bookkeeper or clerk in the employ of the firm when the contract was undertaken, before its completion bought a part of the interest of one of the partners. Part of the fraudulent acts of the partnership were committed before and part after he acquired his interest. A general statement recapitulating the results of the frauds already committed by the original partners was prepared after the new partner acquired his share and the contract thereafter was treated by the firm in its accounts as a firm asset. It did not appear that the new partner participated in any way in the management of the business, but he continued to be connected with the partnership in a clerical capacity. A suit in equity by the defrauded owner against all three members of the partnership having been referred to a master who found the foregoing facts, it was *held*, that a decree granting the plaintiff relief against the third partner as well as against the first two was warranted.

Real and personal property with which the business of a partnership composed of two partners was conducted was held by one of them as trustee for the partnership. The partnership, in performing as agents a contract with the owner of certain goods for their sale, defrauded the owner. During the performance of the contract a third partner was added to the firm, who took no part in the management of the business but acted merely in a clerical capacity. Thereafter, by reason of pressure by an individual creditor of one of the partners, the partner who held the property as trustee and the other active partner by an instrument under seal conveyed all the business and assets of the partnership to an intermediary as trustee for the benefit of and pending the organization of a corporation, subject to "all the debts and liabilities of" the two active partners "contracted in or arising from or on account of" the business and property conveyed. After the charter of the corporation was issued the intermediary conveyed to the corporation what had been conveyed to him by an instrument under seal, with a clause subjecting the property conveyed to debts and liabilities incurred by the two active partners, and the conveyance to the corporation was upon condition that the corporation should pay and discharge "all and singular the indebtedness and liabilities of" the two active partners "contracted in or arising from or on account of the conduct of said business carried on under the name of" the partnership. The statement of debts furnished to the corporation did not include that arising out of the fraud in the performance of the contract above referred to, and no one but the two active partners knew of it and they had no reason to believe that it would be discovered. Capital stock was issued to the three partners and to the wife of one of them. *Held*, that the property right of the partnership to compel the corporation to perform its covenant as to payment of the partnership liabilities, not being one that could be attached at law, could be reached in a suit in equity by the person whom the partnership had defrauded, and that he might in such a suit against the partners and the corporation establish his claim against the partners and enforce payment of it by the corporation.

It is no defense to a suit in equity against a corporation to enforce on behalf of a creditor of a partnership which was the corporation's predecessor an agreement contained in a deed which was accepted by the corporation and which effected a conveyance to the corporation by the partnership of all its assets, to the effect that, in consideration of the conveyance to it, the corporation "assumes and

covenants " to pay all the debts and liabilities of the partnership, that, because the corporation neither signed nor sealed the deed and it was not a contract to be performed within a year, the covenant was unenforceable because of the statute of frauds, R. L. c. 74, § 1, cl. 2, 5, the corporation having accepted and retained the property conveyed.

In a suit in equity it is correct practice for one defendant to bring to the attention of the court by a cross bill any rights he may have against a co-defendant growing out of the subject matter of the suit, so that justice may be done to all parties touching the cause of litigation by granting affirmative relief, if need be, between the several defendants.

Where, in a suit in equity by the owner of certain property against the members of a partnership who had agreed as agents to sell the property for him and against a corporation to which the partnership had conveyed all its property subject to a covenant by the corporation to pay all the debts and liabilities of the partnership, it appears that the plaintiff should be given the relief he seeks and that two of the members of the partnership had made misrepresentations to the corporation at the time of the transfer of the partnership property to it by failing to include the claim of the plaintiff in a schedule of their debts furnished to it, the corporation by a cross bill may have relief against the partners who had caused its loss by such misrepresentations.

It is not a proper function of a cross bill in equity to bring in new parties who are not essential to the case set out in the original bill.

In a suit in equity by the owner of certain property against the members of a partnership, who had agreed as agents to sell the property for him, and against a corporation to which the partnership had conveyed all its property subject to an agreement by the corporation to pay all the debts and liabilities of the partnership, it appeared that the plaintiff should be given the relief he sought and that two of the members of the partnership had made misrepresentations to the corporation at the time of the transfer of the partnership property to it by failing to include the claim of the plaintiff in a schedule of their debts furnished to it. The corporation filed a cross bill setting out the facts as to the misrepresentations of the partners who were its co-defendants and praying for relief against them, and at the hearing of an appeal by it from a final decree for the plaintiff, it sought for a modification of the decree to the effect that the conveyance by the partnership to the corporation should be set aside and that it should be allowed to assert its claim as a creditor against the property for the amount for which it was held liable to the plaintiff. It appeared that the case had not been tried upon such a theory before the final decree. *Held,* that the relief sought by the defendant at the hearing on appeal should be denied because it was not within the scope of the cross bill and because the case was not tried with such relief as an issue.

BILL IN EQUITY, filed in the Superior Court on February 12, 1906, and, after the sustaining of a demurrer, six times amended, with a supplemental bill and an amendment thereto, against James Thorpe, Charles E. Cashin, Thomas E. Wilde and the Jeremiah Clark Machinery Company, seeking an accounting by the defendants Thorpe and Cashin regarding the transactions described in the opinion, seeking to fix upon the defendant Wilde liability for the amount to be found due to the plaintiff

from Thorpe and Cashin because of alleged partnership relations of the three, and also praying that the defendant corporation be ordered to pay to the plaintiffs what was found to be owing to them from the other defendants; also a

CROSS BILL by the Jeremiah Clark Manufacturing Company against Thorpe, Cashin and the plaintiffs setting out the terms of the transfer from the partnership to the corporation, described in the opinion, and alleging that before the original suit was brought one Giles Taintor acted at the same time as attorney for the original plaintiffs and for Cashin and obtained from Cashin information and assistance in the preparation of the case; that it was then the duty of Taintor and therefore of the original plaintiffs his clients, to protect Cashin against liability arising out of these disclosures and to advise Cashin that unless he received from the plaintiffs a release or agreement sufficient to relieve the corporation from liability under the original bill the corporation would have a right of indemnity and exoneration against Cashin as a party primarily liable on this claim, if the corporation had to pay it; that the plaintiffs through their attorney failed so to protect and advise Cashin and by suing Cashin and subjecting him to this liability, the plaintiffs became liable for any damages that might be incurred by him and were bound to indemnify and exonerate him from liability. The prayers of the cross bill were, (1) "that if the corporation is held liable under the original bill, Cashin, Thorpe and the plaintiffs in the original bill may be ordered to indemnify and exonerate the corporation from the same"; and (2) "that the obligation of the original plaintiffs to Cashin to exonerate him from liability on their claim be specifically performed for the benefit of the corporation and be applied in payment of any liability that may be imposed upon the corporation in the original bill."

The suit was referred to Franklin T. Hammond, Esquire, as master. The substance of his report is stated in the opinion.

The master's statement as to the transfer of the property of the partnership to the corporation was as follows:

"An indenture was drawn up and executed dated October 7, 1904, by which Thorpe and Cashin together with" the two who originally had owned interests in the business but who had

sold out to Thorpe as stated in the opinion, "conveyed to one Pearson trustee 'for the benefit of and pending the proper organization of a corporation in the manner and upon the terms hereinafter more specifically set out' all the business and assets including all real estate of the firm known as the Jeremiah Clark Machinery Company subject however ' to all and singular the debts and liabilities of the grantors contracted in or arising from or on account of the granted premises as and when the same are or shall become payable or dischargeable respectively.' The conveyance was declared to be upon trust to convey all these assets to a new corporation to be formed and to be called the Jeremiah Clark Machinery Company 'subject to the debts and liabilities of the grantors as aforesaid which the corporation shall expressly assume and agree to pay or provide for.' And in consideration of the transfer and conveyance the corporation was to issue its capital stock to the order of the grantors in proportion to the interests which they owned in the property transferred. . . .

"Immediately upon the execution of this indenture steps were taken to organize the new corporation under the Massachusetts laws. The agreement of association was signed October 13, 1904. The meeting for organization was held on the same day and officers were elected. . . . On October 17, 1904, the charter was issued to the corporation under the name of the Jeremiah Clark Machinery Company.

"About the same time, October 17, 1904, Pearson the trustee executed an indenture stated to be made between him and the corporation, the Jeremiah Clark Machinery Company, by which in consideration among other things ' of the mutual promises and agreements herein made' Pearson conveyed to the corporation all the assets acquired by him under the conveyance of October 7 subject to all ' the debts and liabilities of James Thorpe and Charles E. Cashin contracted in or arising from or on account of the business and property hereby transferred and conveyed as and when the same are or shall become payable or dischargeable respectively.' The indenture further provided that in consideration of this transfer the corporation ' hereby assumes and covenants to pay and discharge all and singular the debts and liabilities of James Thorpe and Charles E. Cashin contracted

in or arising from or on account of the conduct of the said business carried on under the name of the Jeremiah Clark Machinery Company as and when the same are or shall become payable or dischargeable respectively ... but the grantee hereby expressly repudiates and refuses to pay or in any way provide for any debts or liabilities contracted or incurred by James Thorpe or by Charles E. Cashin outside of the said business heretofore carried on under the name of the Jeremiah Clark Machinery Company.'"

Exceptions of the defendant corporation to the master's report were heard by *Pierce*, J., who overruled them; and a final decree was entered that the defendants Thorpe, Cashin, Wilde and the Jeremiah Clark Machinery Company "are jointly and severally liable to the plaintiff in the sum of $17,943.08, and that the said defendants jointly and severally pay to the plaintiffs the said sum with interest from the date of this decree" together with costs of suit, "and that the cross bill of the defendant Jeremiah Clark Machinery Company be dismissed as against the original plaintiffs, and that the defendants Cashin and Thorpe are liable to the defendant Jeremiah Clark Machinery Company under the cross bill of the latter in damages in the sum of $926.91, and that execution issue therefor and that the defendant the Jeremiah Clark Machinery Company deliver to the plaintiffs the articles found by the master to be the property of the plaintiffs and in the possession of the said defendant."

The defendants appealed.

Other facts are stated in the opinion.

*G. Taintor*, for the plaintiffs.

*S. R. Wrightington*, for the defendant corporation.

RUGG, J. The material facts upon which this suit is founded are that the defendants, Thorpe and Cashin, with two associates, were the owners of a second-hand machinery business conducted under the name "Jeremiah Clark Machinery Company." Conveyance of real estate and personal property, with which this business was conducted, was made to Thorpe, who executed a declaration of trust to the effect that he held the title equally for the benefit of Cashin, himself and two others, each of whom had contributed $6,000 to the purchase price. Subsequently, but before the events here complained of, Thorpe purchased the interest of these last two, and they now have no connection with

this case.   In January, 1904, Cashin sold one sixth of his interest in the property and business and its profits to the defendant Wilde, Thorpe consenting to this transfer.   No articles of copartnership were ever drawn up between Thorpe and his associates, but they considered that the business was being conducted as a partnership, Thorpe and Cashin being actively engaged in its prosecution all the time, while Wilde after purchasing his interest (which was in January, 1904, during the course of dealings complained of in this suit) was connected with the business in a clerical capacity.   The plaintiffs were a committee of bondholders of the Simonds Rolling Machine Company, which had acquired title to a factory and its contents, consisting of a large amount of machinery and stock.   In June, 1902, they entered into a contract with the Jeremiah Clark Machinery Company to sell the property for not less than designated prices on a commission basis, with a guaranty of purchase by the partnership on April 1, 1904, if not sold before, at a price which should yield the plaintiffs with previous sales not less than the appraised value.   Immediately after the execution of this contract (as found by the master) Thorpe with the knowledge and participation of Cashin " entered upon a deliberately conceived scheme to defraud the plaintiffs by selling their property at prices far above those which he reported to the plaintiff and taking the difference for the partnership."   A final statement and apparent end of this scheme was made on April 20, 1904, but minor ramifications of the fraud continued to October, 1904.   As a result the plaintiffs were defrauded of a sum considerably in excess of $10,000.   By reason of pressure by one of Thorpe's individual creditors, and at his suggestion in October, 1904, the Jeremiah Clark Machinery Company, a corporation, was organized to acquire all the assets of the firm which had done business under the same name.   As steps in the execution of this plan, a conveyance was made to an intermediary named Pearson, who, immediately after the charter of the corporation was issued, executed a like conveyance to it of all the assets of the partnership, subject to " all the debts and liabilities of James Thorpe and Charles E. Cashin contracted in or arising from or on account of the business and property conveyed," and the conveyance to the corporation was upon condition that it should pay and discharge " all and singular the indebted-

ness and liabilities of James Thorpe and Charles E. Cashin contracted in or arising from or on account of the conduct of said business carried on under the name of the Jeremiah Clark Machinery Company." The value of the property so conveyed was slightly in excess of $30,000 and the partnership debts, aside from those to the plaintiffs by reason of the frauds committed on them, about $8,200, of which about $1,700 was on notes held by Thorpe, which were subsequently cancelled and nothing paid on them. The statement of debts furnished to the corporation did not include those arising out of the frauds committed on the plaintiffs. The capital stock of the corporation was $24,000, of which certificates for one hundred and eighty shares of the par value of $100 each were issued to Thorpe, who assigned them to his creditor as collateral for his private debt, for ten shares to Wilde, for fifteen shares to Cashin, and for thirty-five shares to Cashin's wife. Immediately after the organization of the corporation and its vote to accept the conveyance of property from Pearson in return for the issue of stock, the officers resigned, and Thorpe and Cashin were elected respectively vice-president and general manager and two of a board of three directors. The master has found that the conveyance to the corporation was not according to the desire of Thorpe and Cashin, but was forced upon them by the creditor of Thorpe, but that they at that time had no good reason to believe that their fraud upon the plaintiffs would ever be detected, and hence that in the conventional sense they had no actual intent to defraud their creditors in making the conveyance, nor did Pearson or the corporation participate in any plan to defraud the creditors of the partnership in receiving the conveyance, for the reason that both conveyances made express provision for the payment of the firm debts by the corporation, and that but for such provision the conveyance would have been a fraud upon the firm creditors.

1. The partnership was liable to the plaintiffs for the frauds committed against them. All the sales of machinery and stock made by the partnership as agents for the plaintiffs and the purchases made by the partnership at the end under the guaranty clause of the contract with the plaintiffs were so tinctured with fraud that the plaintiffs were entitled to full relief as soon as the wrong they had suffered was discovered. It is too late in

the history of law to argue successfully that reasonable reliance upon representations which turn out to be fraudulent must go without relief because the sharpest distrust might have discerned the wrong. It is no ground for not affording relief to the plaintiffs that it would have been possible for them by constant and suspicious watching to have discovered that they were being defrauded. So long as they acted reasonably they have a right to protection. Whether the partnership might have bought machinery under the agreement with the plaintiffs without disclosure of its personal interest is of no consequence in this connection. It did not profess so to buy in most instances, but it deceived the plaintiffs by representing that it was selling as an agent, and also grossly deceived them as to the amount of stock sold.

2. Wilde filed an appeal in the Superior Court from the decree there entered against him. He presented no brief in this court, either personally or through counsel, as required by Rule 2, nor did he appear in person or by counsel to argue his appeal. It is plain that under the English chancery practice, where the appellant does not appear in the court to which the appeal is taken at the time set down for argument, the appeal is dismissed. *Martin* v. *D'Arcy*, 3 H. L. Cas. 698. *Honeyman* v. *Marryatt*, 6 H. L. Cas. 112. *Scanlan* v. *Usher*, 8 Cl. & F. 561. *Sherburne* v. *Middleton*, 9 Cl. & F. 72. *Murphy* v. *Conway*, 9 Cl. & F. 73. There is no statute or rule definitely covering the matter in this Commonwealth. Therefore, the general principles of chancery practice prevail. It was stated in argument at the bar by counsel for other defendants that Wilde was without money to prosecute his appeal. So far as we know, there has never been an instance in this Commonwealth permitting an appeal *in forma pauperis*. Social conditions and the practice respecting costs and the bonds required as security for appeals in this Commonwealth have made inapplicable the rule in this regard which still prevails in England. *Drennan* v. *Andrew*, L. R. 1 Ch. 300. *Biggs* v. *Dagnall*, [1895] 1 Q. B. 207. *Kiff* v. *Roberts*, 33 Ch. D. 265. We proceed to consider the appeal of Wilde upon its merits without intending that this shall be treated as a precedent for future cases.

Wilde was not a member of the partnership at the inception

of the scheme by which the plaintiffs were defrauded. He is described by the master in one place in the report as a clerk in the employ of the firm, and at another place as bookkeeper. The master makes no finding as to whether he knew of the fraud upon the plaintiffs by Thorpe and Cashin, but if " clerk " and " bookkeeper " were used by the master as synonymous, the inference would be almost irresistible that he knew of it. It does not appear that he participated in any way in the management of the business. He bought one sixth of the interest of Cashin, and he thereby became possessed of one twenty-fourth interest in the whole property, and was a beneficiary under the trust agreement, upon the basis of his interest in which shares in the corporation were issued to him. He appears to have been treated as a partner by an entry upon the books of the partnership showing the transfer to him of the interest in the business. Although his name was omitted from the transactions incident to the transfer of the property to the corporation, this does not affect his rights, as he shared in the stock issued for it to the extent of his interest. The declaration of trust plainly indicates that the property was intended to be used in the machinery business, and all the profits accruing from it were to be distributed among the beneficiaries. Joint ownership of property, use of it in a business, sharing of profits and division of net proceeds upon dissolution constitute the part owners partners in the business and liable for its losses as well as beneficiaries of its profits in the absence of a specific agreement defining by express terms the status of the part owners.

Although a part of the frauds of which the plaintiffs complain had been perpetrated before he came into the partnership, some were consummated afterwards, and a general statement recapitulating in detail all the earlier fraudulent transactions was prepared in behalf of the firm, and made the basis of the final settlement between it and the plaintiffs after he became a partner. This statement was made about a month before the time when, under the original contract between the plaintiffs and the firm made in June, 1902, the latter was required to complete the sale and make good its guaranty of purchase. This shows that the contract was treated by the firm of which Wilde was a member as a part of its assets, and its obligations as a part of the firm

liabilities.    Although the master does not describe any more in detail the relation of Wilde to the business, there is enough in these circumstances and in the absence of any other limiting findings to support the decree against him.    *Kingman* v. *Spurr,* 7 Pick. 235.    *Phillips* v. *Blatchford,* 137 Mass. 510.    *Gleason* v. *McKay,* 134 Mass. 419.    *Hoadley* v. *County Commissioners,* 105 Mass. 519.    *Williams* v. *Boston,* 208 Mass. 497.

3. The conveyance of the property to the defendant corporation was upon the express condition that it should assume and pay all the liabilities incurred by Thorpe and Cashin in the conduct of the business under the name of the Jeremiah Clark Machinery Company.    This business had been conducted as a continuing entity without a break from the time it was established by the purchase of the property conveyed to Thorpe as trustee until the corporation was organized.    Thorpe and Cashin were the owners who had conceived and executed the fraud upon the plaintiffs.    They had been all the time, during the changes in the ownership of interests in the partnership property, the active managers of the business, which had throughout its existence been conducted under the impersonal name assumed by the corporation.    If it had been the main purpose of the instrument by which the property was transferred to the corporation to express an obligation on part of the corporation to assume all the outstanding debts, which the conduct of the business had incurred under the management of Thorpe and Cashin, assuming that the retirement of the earlier partners and the admission of Wilde had constituted different copartnerships, it would have been difficult to conceive language more apt.    The plain words of the covenant include liability for all the frauds committed by the two active partners as a part of. their management of the copartnership.    The obligation thus incurred by the corporation was sweeping and without exception.    It was made upon a valuable consideration.    It is this circumstance which prevents the conveyance to it from having been made in fraud of the rights of creditors of the partnership.    Without some provision looking to this end, the finding of the master was, and correctly so, that the transfer would have been a fraudulent one.    It would be plainly in fraud of creditors for a debtor to convey all his property to a corporation, taking in pay therefor certificates of stock which

are pledged to a specified creditor, without making any provision for the payment of general indebtedness. Under these conditions the plaintiffs can maintain a suit in equity to enforce the covenant made for their benefit, although no direct consideration moved from them, and there was no privity of contract between them and the corporation. The defendant corporation has obtained property by virtue of the conveyance, of which the covenant is a part, which in equity and good conscience ought to be held to the satisfaction of the plaintiffs' claim. *Mellen* v. *Whipple*, 1 Gray, 317, 322. *Lincoln* v. *Burrage*, 177 Mass. 378. *Paper Stock Disinfecting Co.* v. *Boston Disinfecting Co.* 147 Mass. 318.

This is not a case where the corporation seeks to set aside a sale induced by fraudulent representations. It would be obliged then to proffer return of the property acquired by the sale. But it is a case where the corporation undertakes to retain all the property acquired by the sale and at the same time avoid the payment of the debts which it agreed to pay as a part of the purchase price simply because the amount of the debts was misrepresented. It cannot keep the advantages of the transaction and avoid its obligation.

This is not one of the cases, which sometimes have been called anomalous in their nature, where the promise from the corporation to Pearson or the partnership for the benefit of the plaintiffs was sufficiently explicit to enable them to bring an action at law in their own names. *Dow* v. *Clark*, 7 Gray, 198. *Exchange Bank* v. *Rice*, 107 Mass. 37. *Frost* v. *Gage*, 1 Allen, 262. *Clare* v. *Hatch*, 180 Mass. 194. *Attorney General* v. *American Legion of Honor*, 206 Mass. 158, 166. *Dean* v. *American Legion of Honor*, 156 Mass. 435, 438. *Union Institution for Savings* v. *Phoenix Ins. Co.* 196 Mass. 230. Moreover, the contract for the assumption of the debt being under seal, no one save a party to it could maintain an action on it. *Boyden* v. *Hill*, 198 Mass. 477, 487.

It is not necessary to determine whether the terms of the conveyance definitely established a trust for the benefit of creditors, which enabled each of them to demand performance, (*Boston* v. *Turner*, 201 Mass. 190, 194, 195, and cases cited,) nor whether the partners had an equitable lien upon the partnership assets to

the extent of requiring the payment of debts, which creditors may enforce for their own benefit in the name of the partners (*Howe* v. *Lawrence,* 9 Cush. 553, 558. *Harmon* v. *Clark,* 13 Gray, 114, 121). The liability of the corporation to the plaintiffs may be worked out in another way. The contract being made by the firm for the benefit of their creditors, the latter may enforce in equity the rights of the copartners to compel the corporation to perform its agreement in this regard. This is a property right not subject to attachment which can be reached in equity and made available for the benefit of the creditor.

It is no answer to this claim for the corporation to say that as against the partners it can set up their fraudulent representations as to the amount of the debts, and that, as this proceeding enforces the agreement made with the partnership, the same defense is open against everybody who sues under this agreement, for the reason that it holds title to the property under the terms of a contract conditioned to pay all debts. It has no other title to its possession except the contract. If the corporation stands on its contractual rights it must stand on the whole of them. It cannot assert that part of the contract which turns out to be for its gain, and reject that which causes it loss. Resting its title to the property of the partnership upon a conveyance which but for the agreement for the payment of debts would be fraudulent and thus liable to be set aside, it cannot put forward as against creditors enforcing performance of this agreement damages sustained by it through misrepresentations as to the amount of debts, although this might be open to it in an action where the partners and it alone were concerned. To permit such a defense would enable the corporation to retain the property in fraud of firm creditors as effectually as if conveyed to it without any obligation to pay them. The substance of the transaction then would be a plain conveyance in fraud of creditors. Equity does not suffer itself to be circumvented by specious devices. It looks through the form to the substance, and deals with things as they are, regardless of disguises. A chain of reasoning is not sound which leads to a result claimed by the defendants. An agreement induced by misrepresentations ordinarily is not enforced in equity. But where the agreement ought to be set aside as fraudulent unless specifically performed and the defend-

ant elects to assert the validity and claim the fruits of the contract, there can be no just complaint against performance according to its terms.

It is not necessary to consider whether the sale was voidable because not in compliance with the statute relating to sales of merchandise in bulk. St. 1903, c. 415.

4. There is nothing in the argument of the corporation that the statute of frauds is a defense to it because the indenture of transfer appears not to have been signed by it, and thus it has not agreed in writing to answer for these debts, and also that the agreement was not to be performed within one year. It accepted and holds property, which was conveyed upon condition. The sale of the property cannot stand except upon performance of the condition.

5. The defendant corporation filed a cross bill seeking, if it should be held liable to the plaintiffs, to establish its damages against its co-defendants, Thorpe and Cashin, arising from their misrepresentations to it as to the amount of the indebtedness of the copartnership, and also to establish a breach of the covenant of title in the conveyance from them through the intermediary to it, and further to be subrogated to whatever rights Cashin may have against the original plaintiffs.

It is correct practice for one defendant to bring to the attention of the court by a cross bill any rights he may have against a co-defendant as well as against the plaintiffs growing out of the subject matter of the suit, so that justice may be done to all parties touching the cause of action in litigation by granting affirmative relief, if need be, between several defendants. *Morgan's Co.* v. *Texas Central Railway*, 137 U. S. 171, 200. Upon the findings made by the master it is plain that Cashin has no claim against the plaintiffs. The fact that the defendant corporation is held liable for the plaintiffs' debt constitutes no breach of the warranty of title in the conveyance of the property. The defendant is entitled to relief against Thorpe and Cashin for the damages sustained by it through the misrepresentation as to the amount of the debts of the partnership, and the decree should be modified to this extent. This is in accordance with the master's report.

6. The defendant corporation complains that there was error

in overruling its motion that the plaintiff be required to join Mrs. Cashin as a party to the suit, in order that it might file a cross bill against her. She was not a necessary party to the cause of action set out in the plaintiffs' bill. They asked no relief against her, and she had no interest in the subject matter they were litigating, except such as she might have as a stockholder in the defendant corporation, and in that regard she was represented by the corporation. It is not a proper function of a cross bill to bring in new parties not essential to the case set out in the bill of complaint. The defendant corporation can try whatever causes of action it has against her in another proceeding without reference to these plaintiffs or to this cause of action.

7. The defendant corporation urges that the conveyance should be set aside and that it be allowed to assert its claim as creditor against the property for the amount for which it is held liable. Without adverting to other objections, it is enough to say that this is not within the scope of its cross bill, and is not the theory upon which the case has been tried.

Other arguments presented in defense which have not been discussed are not regarded material.

The result is that no error is disclosed, except that the portion of the decree relating to the defendant corporation's cross bill should be modified so as to include in addition to the damages there established against Thorpe and Cashin the damages sustained by reason of their misrepresentation as to the amount of firm indebtedness assumed by it, and as so modified is affirmed with costs.

*So ordered.*