BOSTON AND MAINE RAILROAD *vs.* CONSTRUCTION MACHINERY CORPORATION & another.

Middlesex.    November 4, 5, 1963. — December 3, 1963.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Deed,* Construction, Covenant. *Real Property,* Covenant running with the land, Covenant to provide services. *Equity Jurisdiction,* Covenant, Specific performance.

In a deed by a railroad conveying a parcel of land with a railroad station building thereon adjacent to land retained by the railroad on which were located its tracks at second story level, platforms along the tracks, and ramps between the platforms and ground level, the language of certain provisions, properly construed in the circumstances, meant that the grantee and its successors in title undertook, not only to provide for

the railroad and its patrons specified railroad station facilities and services in the granted building and access over the granted parcel to and from such platforms and ramps, but also to remove snow and ice from and to light the platforms and ramps even though they were on railroad property.   [517–518]

Where a deed by a railroad, executed by the grantee as well as by the railroad, conveyed a parcel of land with a railroad station building thereon adjacent to land retained by the railroad on which were located its tracks at second story level, platforms along the tracks, and ramps between the platforms and ground level, and contained covenants, expressly stated as running with the granted parcel and as binding the grantee and its successors in title, whereby the grantee for itself and them undertook to provide for the railroad and its patrons specified railroad station facilities and services in the granted building and access over the granted parcel to and from such platforms and ramps, and also to remove snow and ice from and to light the platforms and ramps, the covenants as to snow and ice removal and lighting were specifically enforceable by the railroad in equity against one to whom the grantee in such deed had conveyed the parcel with the station building thereon. [518–521]

BILL IN EQUITY filed in the Superior Court on January 16, 1962.

The suit was heard by *Dewing,* J.

*Harold E. Magnuson (Hugh J. Mulligan, Jr.,* with him) for the defendant DeVries Supply Company, Inc.

*William D. K. Crooks, Jr.,* for the plaintiff.

CUTTER, J.   The railroad seeks by this bill in equity to obtain specific enforcement of certain undertakings[1] of its grantee (to remove snow and ice from the railroad's ramps and platforms and to light them).   These undertakings were set out in a deed, dated December 28, 1960, to Construction Machinery Corporation (Construction), by which the railroad conveyed to Construction land (parcel 1), in-

---

[1] The deed of December 28, 1960, provided in part, as follows: "By the acceptance of this deed and as part consideration therefor, . . . [Construction], for itself, its successors and assigns, covenants . . . [A] to provide on . . . [p]arcel 1 and [B] to maintain without charge or cost to the grantor [the railroad], its successors, assigns and patrons but only so long and to the degree so required by . . . [the] Department of Public Utilities . . . in a manner reasonably satisfactory to . . . the principal engineering officer of the grantor . . . for the accommodation of and use by said grantor . . . and [its] patrons, the following railroad station facilities and services:   (a) in the existing depot building on said parcel 1 and in any new building erected on said [p]arcel 1 in substitution for such depot building, a waiting room, a ticket office and baggage room . . . [and toilet rooms];   (b) snow and ice removal from [C] *the platforms, ramps and access ways* to and from said station facilities;   (c) access on and over said [p]arcel 1 and to and through said existing depot building and . . . any [substitute] building . . . and to,

cluding the Winchester railroad station, on the west side of the railroad. The undertakings were expressed as covenants and, for convenience, are referred to as "the covenants." Parcel 1 did not include the railroad's land on which stand the northbound and southbound railroad tracks and platforms, all of which were at the level of the second story of the railroad station, and the ramps leading thereto from the street level. Construction conveyed parcel 1 to DeVries Supply Company, Inc. (DeVries), by a deed which provided that DeVries, "by the acceptance hereof, hereby assumes and agrees to perform each of the covenants, agreements, and obligations set forth in" the deed of December 28, 1960, "which are applicable to [p]arcel 1."

The accompanying sketch plan shows parcel 1 and the immediately adjacent railroad land, tracks, platforms, and ramps. Additional platform space and other ramps lie on railroad land to the north of those shown on the plan.

Construction and DeVries were joined as defendants. The case was in effect heard upon a statement of agreed facts, which set out, or showed by attached plans, the facts already stated, so far as not established by the pleadings. The trial judge took a view.

DeVries is willing to remove snow and ice from its own property but is not willing to remove snow and ice from the ramps, platforms, and access ways on the railroad property. DeVries contends that it is not bound to light the platforms and ramps on the railroad property.[2]

from and through said waiting room, ticket office, baggage room and toilet rooms and [D] to and from *said platforms, ramps and access ways;* (d) janitor service in and to said station facilities and heat and light to said waiting room, ticket office, baggage room and toilet rooms, *and [E] light to said platforms, ramps and access ways* . . . . [F] The covenants contained in this paragraph are to be covenants running with said [p]arcel 1 and are to be binding upon said grantee, its successors and assigns" (emphasis supplied).

For convenience in referring to specific portions of the covenants, the letters A, B, C, D, E, and F in brackets have been inserted in the text.

The deed from the railroad to Construction was executed and acknowledged both by the railroad and by Construction. The complete deed from Construction to DeVries, mentioned later in the body of the opinion, does not appear in the printed record, so there is no indication of the form in which it was signed.

[2] The expense of lighting the ramps and platforms for the months of July and August, 1961, and providing platform lamps in January, 1962, was $105.30. The cost of removing snow from the platforms on two occasions in February, 1962, was $40.50.

( Based upon Exhibits 1 and 2)

COMMON STREET

PARCEL #1

R. R. STATION

Door To Waiting Room 1st Floor Level

Access Door To Platform 2nd Floor Level

PLATFORM

Access Sidewalk - 5' wide

RAMP DOWN

RAMP DOWN

Railroad Tracks on 2nd Floor Level

Pedestrian Underpass

PLATFORM (on second floor level)

RAMP DOWN

RAMP DOWN

PLATFORM continues

More ramps about 200' to 300' to the North.

PLATFORM continues

More ramps about 200' to 300' to the North.

To Boston

N

0     50     100

Approx. Scale - feet

The trial judge, in his order for a decree, said, ''The building . . . on the premises . . . does contain a waiting room, a ticket office, and baggage room on the street level. There is a stairway within the building that leads from the waiting room to the second floor where there are rented offices, but this corridor also leads to a door that gives access to the station platform . . . . The terms of the deed and the practical interpretation of the plans . . . would be that the [railroad] patrons . . . should be able to leave the waiting room and go up the inside stairway leading to the railroad platform, rather than being obliged to go . . . up an outside ramp.'' The judge ruled that DeVries ''is obliged under . . . the deed to remove the snow and ice from the platforms, ramps, and access ways to and from said station facilities, whether . . . on the property of . . . [DeVries] or on the [r]ailroad property. The deed was . . . accepted with the expectation that the [g]rantee would relieve the railroad of its necessary duties . . . required to give proper service to the patrons . . . . This likewise applies to the lights on the platforms, ramps, and access ways, whether on the premises of . . . [DeVries] or on those of the [r]ailroad . . . used by its patrons.'' By the final decree DeVries was ordered, among other things, to remove snow and ice from the platforms, ramps, and access ways, to provide reasonable access over parcel 1 through the building[3] and its various public rooms to the platforms, ramps, and access ways, and to provide suitable light to the platforms, ramps, and access ways.

The bill was dismissed as against Construction. DeVries appealed.

1. The plan annexed to the deed of December 28, 1960, shows no ramps or platforms either on parcel 1 or on the adjacent railroad land. A further plan shows such ramps

---

[3] It was stipulated at the trial that an employee of the Department of Public Utilities ''had told DeVries that it was permissible to lock the door leading from the second floor of the depot building to the platforms.'' At least so long as the department adheres to this position, the covenant in terms would seem to release DeVries from any obligation to provide access to the platforms through that door.

and platforms on the railroad land as indicated on the accompanying sketch plan, but no ramps or platforms on parcel 1.

The opening sentence of the covenants (see fn. 1, *supra*) taken alone, does not by itself indicate clearly whether the duties imposed by the covenants are to be performed entirely on parcel 1 or whether they relate also to land retained by the railroad. The words in this opening sentence, at point [A], "to provide on . . . [p]arcel 1," suggest that only parcel 1 is involved. Nevertheless, later detailed provisions of the covenants in subparagraphs (b), (c), and (d) refer, at points [C], [D], and [E], to "the platforms, ramps, and access ways." Because the platforms and ramps appear to be wholly on railroad land, we hold that the language of the covenants is not restricted to parcel 1, and that the words "to maintain without charge or cost to the grantor" (at point [B]) in the first sentence of the covenants refer not only to facilities and services to be provided on parcel 1, but also to facilities and services to be provided on the railroad's platforms and ramps. DeVries, by assuming the burden of the covenants, has in terms agreed to remove snow and ice from the railroad's adjacent platforms and ramps and to light them. In reaching this conclusion, we recognize the principle that, if language remains ambiguous, doubts are to be resolved in favor of freedom of the land from servitude. See *Harrington* v. *Anderson*, 316 Mass. 187, 189–190. In the circumstances revealed by the plans (see *Hurd* v. *General Elec. Co.* 215 Mass. 358, 361; *Lynnfield* v. *Peabody*, 219 Mass. 322, 337), we think no real ambiguity exists.

2. DeVries contends that the covenants do not bind it because they do not so touch or concern parcel 1 and the land retained by the railroad as to cause the burden of the covenants to bind parcel 1 in the hands of later owners claiming through Construction. This contention may rest upon the reluctance exhibited in some earlier decisions to treat as running with land at law or in equity covenants or servitudes of an unusual nature (a) restricting the use of

land for the benefit of other land or (b) imposing upon land unusual burdens, affirmative or otherwise, at least in matters which do not affect the convenience of the use of a dominant parcel of land.   See *Norcross* v. *James,* 140 Mass. 188, 191–193 (covenant against use of land to compete with owner of adjacent land); *Lincoln* v. *Burrage,* 177 Mass. 378, 379–381 (covenant to pay for use of party wall where covenantee owned no dominant estate); *Shade* v. *M. O'Keefe, Inc.* 260 Mass. 180, 182–183 (covenant against competitive use of land); *Orenberg* v. *Johnston,* 269 Mass. 312, 314–316 (covenant to maintain a tower clock, but not for the benefit of any designated dominant tenement).   See also *Snow* v. *Van Dam,* 291 Mass. 477, 480–481; Restatement: Property, § 537.

How far affirmative or unusual burdens may be imposed by covenant or servitude on land for the benefit of other land, in such a manner as to bind the land of the promisor and to benefit the land of the promisee in the hands of their respective assignees, has been the subject of much discussion.[4]   Because, however, of the nature of the covenants in this case in relation to the parcels of land owned by DeVries and the railroad, we need not decide whether at the present time, there would be less reluctance, than was shown in some of the earlier cases, to enforce affirmative undertakings or undertakings somewhat indirectly related to the use of a dominant parcel.   See *Everett Factories & Terminal Corp.* v. *Oldetyme Distillers Corp.* 300 Mass. 499, 504–509; Swaim, Crocker's Notes on Common Forms (7th ed.) §§ 131, A 13; Powell, Real Property, § 675, p. 175; Corbin, Contracts, §§ 808, 810, 826; Reno, The Enforcement of Equitable Servitudes in Land, 28 Va. L. Rev. 951, 961–979, 1067, 1070, 1085 et seq; Tiffany, Real Property (3d ed.) §§ 848–854, 859.   See also *Whitney* v. *Union Ry.* 11 Gray,

---

[4] See Clark, Covenants and Interests Running with Land (2d ed.) 92–143; Am. Law of Property, §§ 9.11–9.16; Powell, Real Property, §§ 670–681; Walsh, Covenants Running with the Land, 21 N. Y. U. L. Q. Rev. 28; Lloyd, Enforcement of Affirmative Agreements Respecting the Use of Land, 14 Va. L. Rev. 419, 426; Chafee and Simpson, Cases on Equity, pp. 821–829; Note, 39 Yale L. J. 911.   See also Bolles, Land Running Covenants in Massachusetts, 7 B. U. L. Rev. 1; Note, 46 Cornell L. Q. 349.

359, 363–366; *Putnam Furniture Bldg. Inc.* v. *Commonwealth,* 323 Mass. 179, 184–185.

These covenants relate to land devoted largely to specialized railroad uses. In 1960, the railroad retained title to its tracks, ramps, and platforms, with an appurtenant easement to use, and for its patrons to use, certain facilities on parcel 1 granted to Construction. The platforms and ramps were physically closely connected with parcel 1 and, in community of use at least, with the retained easements to use parcel 1. The presence of the ramps and platforms and the proximity of the railroad presumably added value to the granted premises for certain business uses. Doubtless, mercantile tenants of buildings upon parcel 1 might gain advantage from accessibility to the railroad and from the convenience with which railroad patrons could reach parcel 1 from the platforms and ramps. To have the ramps and platforms lighted and kept free of snow would seem likely to be of some benefit to parcel 1. Certainly these services were a benefit to the railroad's retained premises. The circumstances show adequately that the undertakings in the covenants sufficiently touched and concerned not only parcel 1, but also the railroad land, to justify carrying out the reasonable expectations of the parties to the 1960 deed (see fn. 1 at point [F]) that the obligation would run with parcel 1 (see Restatement: Property, §§ 531, 534), by enforcing the covenants in equity against DeVries while it remains the owner of parcel 1.

The obligation imposed is not, in the circumstances, of such a character as to make it either difficult to enforce or unreasonable in scope (see fn. 2, *supra*). To be sure, the affirmative undertakings amount to more than mere payment of money. Compare the *Everett Factories & Terminal Corp.* case, 300 Mass. 499, 504–505. Nevertheless, the work (snow removal and supervision of lighting) can readily be carried out without undue burden by the owner of the railroad station (or the owner of any building substituted therefor). See *Morse* v. *Aldrich,* 19 Pick. 449, and *Whittenton Mfg. Co.* v. *Staples,* 164 Mass. 319, 330–331,

where there is recognition of the propriety of equitable enforcement of at least some affirmative duties attached to land. See Note, 68 A. L. R. 2d 1022; Note, 35 N. Y. U. L. Rev. 1344.

DeVries not only took title to parcel 1 with actual notice of the covenants, but it also assumed and agreed to perform them. Even if the covenants were wholly personal in character, it would not necessarily follow that the railroad would be precluded from their enforcement in an equity suit to which Construction is a party. There is, however, no occasion now to decide whether past Massachusetts decisions, if necessary, should be expanded to permit the railroad to enforce such personal obligation in accordance with the weight of authority elsewhere.[5] Since the covenants before us substantially touch and concern parcel 1 and the railroad's land, the cases already cited amply justify specific enforcement.

The final decree is affirmed. The railroad is to have costs of this appeal.

*So ordered.*

---

[5] See Restatement: Contracts, §§ 133, 138; Pomeroy, Equity Jurisprudence (5th ed.) §§ 1295, 1297; Corbin, Contracts, §§ 808, 810, 826, 1154; Williston, Contracts (3d ed.) §§ 347–367, and (2d ed.) §§ 1418, 1419, 1423, 1453; Note, 28 B. U. L. Rev. 465, 471–474. See also *Forbes* v. *Thorpe,* 209 Mass. 570, 581–582; *Gillis* v. *Bonelli-Adams Co.* 284 Mass. 176, 181. Cf. *James Stewart & Co. Inc.* v. *National Shawmut Bank,* 291 Mass. 534, 552–553.